Syllabus.

# JOHN F. HOGE

## *v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 15, 1886.*

1. CRIMINAL LAW—*possession of stolen property, as evidence of guilt—explanation of such possession—degree of proof required.* It is error for the court, on trial of one for larceny, to instruct the jury that the possession of the stolen property soon after the theft is sufficient to convict, unless such possession is satisfactorily explained, and that an *alibi* must be clearly and satisfactorily proved before that defence can avail.

2. The burden of proof is on the People to establish a defendant's guilt of the crime charged; and when the defendant charged with larceny introduces evidence to explain his recent possession of the stolen property, and tending to establish an *alibi*, if the jury, after considering the evidence introduced by him as to either or both such questions, in connection with the other evidence, have a reasonable doubt of his guilt, they should acquit.

3. SAME — *former decision.* The ruling of this court in the case of *Waters* v. *The People*, 104 Ill. 544, is not at variance with the rule announced in this case. There the defendant was found in the possession of the property almost immediately after it was stolen, and no evidence was offered to explain his possession, so that the question of the extent to which he was required to make explanation of his possession to exonerate himself, was not before the court, and the instruction in that case, though irrelevant, could not possibly have been misleading.

4. SAME—*larceny—horse stealing—finding the value.* It is not essential to a conviction for the larceny of horses, that the jury in their verdict shall find their value. The distinction between grand and petit larceny as to the offence of horse stealing, is abolished in this State.

5. WITNESSES—*competency of grand juror to prove what a witness testified to before grand jury.* It is competent to prove by members of a grand jury that a witness testified differently before that body from his testimony on the trial, where the proper foundation is first laid.

6. SAME—*credibility—giving false testimony.* An instruction to the jury, that if they believe, from the evidence, that a witness has testified falsely as to any material fact in the case, they may, and it is their duty to, disregard his entire evidence, except so far as he is corroborated by other credible evidence, or by facts and circumstances proved on the trial, is erroneous, in omitting the very material qualification that the false testimony shall have been willful, and in directing the jury to disregard this testimony of the witness. The jury *may*, but are not bound to, disregard the evidence.

7. SAME—*impeachment—of the mode.* To show an *alibi* in a criminal case, the defendant called as a witness a former clerk of a hotel, and proved by him that he saw the defendant at the hotel on the morning after the larceny, between four and five o'clock. The People then introduced evidence to show that the witness was discharged as hotel clerk, a day or so before the time spoken of, for drunkenness. This was not done to contradict the witness by showing his absence, it being conceded he was at the hotel at that time, but it was the evident purpose thereby to impeach him: *Held,* that the court erred in admitting the evidence, as the witness could not be impeached in this way. If his reputation for truth and veracity was bad, that fact should have been proved. Why his employer discharged him was immaterial.

8. In order to impeach a witness by showing he testified differently on his examination before the grand jury, his attention must first be called to his testimony before that tribunal, and he be allowed to state whether he did not testify as claimed. If he admits he did, he may explain why his present testimony is different; but if he denies that he testified differently, he may be contradicted.

9. INSTRUCTIONS—*directing attention to only a part of the evidence.* An instruction which selects a part of the evidence on a particular question and calls the attention of the jury to it, and omits other evidence that is entitled to be considered, on the same question, is calculated to mislead, and is erroneous.

10. SAME—*curing errors by other instructions.* In order that objectionable instructions may be cured by others, the latter must either directly refer to and explain and qualify the former, or be supplementary to the former, and supply what was omitted in them; but when the latter are supplementary to the former instructions, the former must be correct as far as they go, and be defective only in not going further, and including what is supplied by the supplementary ones.

11. Where one instruction declares that the law is one thing with regard to a particular matter or state of circumstances, and another one states that the law is another and materially different thing with regard to precisely the same matter or state of circumstances, the instructions are repugnant, and no repetition of the correct ones can cure the error of those that are incorrect.

12. ERROR—*whether ground for reversing.* Where this court can see, from the record, that the evidence is so overwhelmingly against a defendant tried for a criminal offence, that had the jury been instructed correctly they must still have found against him, it will not reverse a judgment of conviction for mere error of instruction. But where the evidence leaves the question of guilt doubtful, or is not clear and satisfactory, the defendant is entitled to have it passed upon by a jury instructed with substantial accuracy as to the law applicable to it.

WRIT OF ERROR to the Circuit Court of Grundy county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. R. M. WING, for the plaintiff in error: .

The second instruction for. the People does not state the law of the case correctly. *Smith* v. *The People,* 103 Ill. 85; *Comfort* v. *The People,* 54 id. 404; *Sahlinger* v. *The People,* 102 id. 41; *Conkwright* v. *The People,* 35 id. 204; *Jones* v. *The People,* 12 id. 259.

Proof of recent possession of stolen property simply raises a presumption of guilt that can be destroyed by an explanation. It does not require an affirmative defence to be made by the defendant to relieve him from the effect of such possession. If the attending circumstances, or other evidence explanatory, so far overcome the presumption thus raised as to create a reasonable doubt of the guilt of the accused, he should be acquitted. *Smith* v. *The People, supra; Mullins* v. *The People,* 111 Ill. 46.

The instruction is faulty and erroneous in requiring a degree of proof on the part of the defendant not required in a civil case. *Herrick* v. *Gray,* 83 Ill. 89; *Railroad Co.* v. *McMath,* 4 Bradw. 359; *Smith* v. *State,* 2 Am. Cr. Rep. 375.

Evidence in explanation of such possession may fall short of a satisfactory explanation, and yet be sufficient to acquit. If it creates a reasonable doubt, it practically rebuts the presumption of guilt. *Clackner* v. *State,* 33 Ind. 412; *Way* v. *State,* 35 id. 409.

It is no answer to the objection to say there were other instructions for the People given which lay down the rule more accurately. It has been held repeatedly that an erroneous instruction is not cured by another which correctly states the rule, because it leaves the jury at liberty to select and act upon either instruction, as might best accord with their views. *Railroad Co.* v. *Payne,* 49 Ill. 499; *Railroad Co.* v. *Harwood,* 80 id. 88; *Railroad Co.* v. *Lee,* 60 id. 502; *Railroad Co.* v. *Maffitt,* 67 id. 431; *Deman* v. *Bloomer,* 11 id. 177; *Railroad Co.* v. *Dunn,* 61 id. 386; *Railroad Co.* v. *Dimick,* 96 id. 47; *Railroad Co.* v. *Britz,* 72 id. 257; *Railroad Co.* v.

*Murray,* 62 id. 326; *Railroad Co.* v. *Van Patten,* 64 id. 510; *Railway Co.* v. *Henks,* 91 id. 408; *Quinn* v. *Donovan,* 85 id. 194.

It was error to select out the defendant's witnesses by name, and tell the jury that if they believed, from the evidence, that they had testified willfully false as to any material matters, they might disregard this evidence, except so far as corroborated. The court should not cast its influence against any particular witness. *Rafferty* v. *The People,* 72 Ill. 46.

It is sufficient if the evidence on the question of an *alibi,* taken in connection with all the other evidence in the case, raises a reasonable doubt of guilt. *Mullins* v. *The People,* 110 Ill. 46; Wharton on Crim. Evidence, (8th ed.) sec. 333.

The court erred in refusing to allow the defendant to prove that the People's witnesses had testified differently before the grand jury to what they did on the trial. *Granger* v. *Warrington,* 3 Gilm. 300; *Bressler* v. *The People, post,* 422.

Messrs. COOK & LAWRENCE, also for the plaintiff in error:

It was not necessary that the defendant should have been able to explain satisfactorily the manner in which he acquired possession of the horses, under the circumstances of this case, to raise a reasonable doubt of his guilt, and entitle him to an acquittal. The instruction on this part of the case took from the defendant a defence the law gave him, and was clearly erroneous. *Smith* v. *The People,* 103 Ill. 82; *Sahlinger* v. *The People,* 102 id. 41; *Conkwright* v. *The People,* 35 id. 204; 2 Starkie on Evidence, 450; *The People* v. *Jones,* 12 Ill. 259; *The People* v. *Mooney,* 111 id. 388; *Stratton* v. *Railway Co.* 95 id. 32.

The testimony of Hynds as to the cause of the discharge of Hanna was improperly admitted.

The court erred in telling the jury that if they believed so and so, from the evidence, it was their duty to disregard the testimony of certain witnesses'. *Otmer* v. *The People,* 76 Ill.

149; *Ruddock* v. *Belden,* 7 Bradw. 520; *Swan* v. *The People,* 98 Ill. 612; *Express Co.* v. *Hutchins,* 58 id. 44; *Pope* v. *Dodson,* 58 id. 360; *Gulliher* v. *The People,* 82 id. 146.

The verdict fails to find the value of the property, which was necessary. *Sawyer* v. *The People,* 3 Gilm. 53; *Collins* v. *The People,* 39 Ill. 293; *Hyland* v. *The People,* 3 Scam. 392.

Mr. ORRIN N. CARTER, State's Attorney, Mr. GEORGE HUNT, Attorney General, and Mr. J. L. O'DONNELL, for the People:

The burden of proving an *alibi* devolves upon the accused, and it must be clearly and satisfactorily established where the evidence otherwise makes out a clear case against him. *Garrity* v. *The People,* 107 Ill. 167; 1 Wharton on Crim. Law, 708–744; *Miller* v. *The People,* 39 Ill. 465; *Creed* v. *The People,* 81 id. 565; *Mullins* v. *The People,* 110 id. 42.

If the instructions, taken as a whole, state the law substantially correct, or substantial justice has been done, a reversal will not be had for mere errors in some of the instructions. *Leach* v. *The People,* 53 Ill. 311; *Kennedy* v. *The People,* 40 id. 488; *Peri* v. *The People,* 65 id. 17; *Ritzman* v. *The People,* 110 id. 362; *Bressler* v. *The People, post,* 422.

The instructions as to the presumption arising from the possession of recently stolen property, was taken *verbatim* from one in the case of *Waters* v. *The People,* 104 Ill. 544, which this court held good. See, also, *Creed* v. *The People,* 81 Ill. 565.

It is not always objectionable in an instruction to call the attention of the jury to particular facts. *Logg* v. *The People,* 92 Ill. 598; *Hanrahan* v. *The People,* 91 id. 142.

Evidence that a witness had made contradictory statements out of court, or at another time and place, can not be admitted unless the attention of the witness is first called to such statements. *Regnier* v. *Cabot,* 2 Gilm. 34; *Miner* v. *Phillips,* 42 Ill. 123; *Winslow* v. *Newlan,* 45 id. 145; *Richardson* v. *Kelly,* 85 id. 491; 1 Greenleaf on Evidence, secs. 466, 467.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This writ of error brings before us for review the record of the conviction of John F. Hoge, at the November special term, A. D. 1885, of the Grundy circuit court, of the crime of larceny. It was proved on the trial, and not controverted, that two horses, owned by Lars Thorsen, were stolen on the night of the 31st day of March, A. D. 1885, from his barn, in Grundy county, which is two and a half miles west from Morris, in that county, and about twenty-five miles west from Joliet, in Will county; that they were found by Eli Thorsen, a son of Lars, about noon the next day, (April 1,) in a stable in Joliet, in the possession of Morris Tausig, a horse buyer from Chicago, and recovered; that about nine o'clock on that morning the horses were sold by the defendant to Tausig, in a stable in Joliet, for $135; that the defendant is a young man, at that time a little past twenty-two years of age, residing with his father in Grundy county, in the same general direction from Morris, but two miles and a half or three miles farther from Morris than Thorsen; that he left his father's house on horseback, near four o'clock in the afternoon of March 31, going in the direction of Morris, and professing to be going to Chicago to buy some groceries for the family; that defendant, some time during that evening, was in Morris, put his horse up at a livery stable, and he was seen at several different places in the town during the evening, and that he left a restaurant about ten o'clock, saying that he was going to the Carson House, a hotel near the depot. Whether he, in fact, went to the Carson House, is in contest. He swears that he went there, found no one up but a negro porter, asked and obtained a bed from him, was waked up by him for the train passing Morris for Chicago at 3:35 A. M., April 1, and that he paid the porter for the bed, but omitted to register his name. The porter denied all this, and the defendant then proved that the porter had admitted

to the witness that he stayed at the house on that night, and also introduced evidence tending to impeach the porter. The defendant testified, that intending to go to Chicago, he got on the train (3:35 A. M.) without procuring a ticket; that the conductor passed him without demanding his fare, and that therefore he paid none; that on approaching Joliet he remembered that the regular monthly horse fair was held there that day, and he concluded to stop and attend the fair, and resume his trip to Chicago on a later train. The brakemen testify that they saw no one get on that train at Morris, and the conductor testifies that he was informed by the ticket agent at Morris that he had sold no ticket for that train; that he passed through the train after leaving Morris, and failed to discover the defendant, though he admitted that any conductor was liable at some times to overlook a passenger, and it may be that the fact that he was informed by the ticket agent that he had sold no ticket, made him less careful and observing than he otherwise would have been. The defendant testified that after getting off the train at Joliet he went to the Schurts Hotel, arriving there between four and five o'clock in the morning, (April 1st,) and he introduced evidence to sustain himself in this respect, and the State introduced evidence contradicting him. The defendant further testified that he remained in this hotel until it was light, or the sun was up, and he then went to the National Hotel to see if any one from Morris was there; that after making inquiry in this respect, he observed from the hotel door these horses, some ten or twelve rods distant, standing in the street. A man was sitting on one, and two men were standing by; that he walked up to where the horses were standing, and inquired whether they were for sale; that the man sitting on the horse replied that they were, and that after examining the horses and going through with some bantering, he purchased the horses for $125, which he paid at the time. The defendant further testified that he did not steal the horses, nor have any hand or

part in stealing them; that although he had seen these horses before, he did not, at the time he purchased them, recognize them; that the man from whom he purchased, and the men standing by, were strangers whom he had never seen before; that after purchasing he started off, leading them, when the man from whom he purchased advised him that he had better ride one and lead the other; that he then went with the horses to the stable of a person, whose name is given, who had kept horses for him before, but his stable being full, he referred the defendant to another stable, where he took the horses, and where they remained until after he sold them to Tausig; that he then went back to the Schurts Hotel and got his breakfast, and afterwards he returned to the stable, and about nine o'clock sold the horses to Tausig. Uncontradicted evidence proves that the defendant had for several years been doing business for himself, buying and selling stock of different kinds, and that on one occasion he had dealt in horses at the Joliet horse fair; that he was, a day or two before this occurrence, in the possession of several hundred dollars in money, and it seems to be conceded that his father is a man of some wealth. The defendant, as was his father before him, was born and raised, and had lived all his life, in Grundy county, and some thirty witnesses, including citizens of the highest official and business standing, testified to having known him throughout his life, and were acquainted with his reputation among his neighbors for honesty, and that it was good. The defendant made no effort to conceal the horses at Joliet, and when Tausig required his name, and that he be identified, he gave his name and his residence correctly, and went with him upon the street and found a man from Grundy county whom he knew, and who identified him to the satisfaction of Tausig. He told Tausig the same story, in regard to how he came by the horses, to which he testified on the trial.

A witness on behalf of the People testified that he knew the defendant; that witness left the Rock Island depot, in

Joliet, where he was learning telegraphy, about six o'clock in the morning of April 1, to go to his boarding house, west of the river bridge; that he met the defendant west of the bridge, about a square from the National Hotel; that he had two horses,—was riding one and leading the other. The National Hotel, as we understand the evidence, is farther west than the bridge, and it was, as before stated, in front of it that defendant testified that he bought the horses.

Three witnesses testified, on behalf of defendant, that they each, at a different point, saw this team early in the morning of the 1st of April still farther west than the National Hotel, passing from the west,—the direction of Morris,—eastwardly, and that it was then in the possession of a man riding one and leading the other, who they say positively was not the defendant, and who did not in general appearance resemble him, having on differently colored and quality of clothing, and having differently colored hair, etc., and being much larger in size. If these witnesses are truthful, (and no attempt is made to impeach them other than by the contradictory facts testified to by other witnesses,) some man other than the defendant was in the possession of these horses as they were entering Joliet from the west, and there is no evidence tending to connect the defendant with that man, except the evidence given by the defendant, which is, that he was a *bona fide* purchaser from him. It may also be mentioned, as entitled to some consideration, that this fair had been held for some years on the first Wednesday of each month; that it drew large crowds, made up chiefly of buyers and sellers and those seeking information in such matters; that persons in Grundy county were in the habit of attending the fair; that on this occasion the crowd in attendance was large, and that some persons bought at sales at the fair from strangers, without requiring guaranty or identification of the sellers.

There are other circumstances in evidence, of a criminating character, relied upon by the People, and perhaps there are

some exculpatory circumstances relied upon by the defendant, which we have not deemed it necessary to notice; but this is sufficient to fairly present the questions of law arising upon the record.

The court, at the instance of the People, instructed the jury, in the second and twenty-second instructions, as follows:

"2. The court instructs the jury, that recent possession of stolen property soon after the theft is *prima facie* evidence of guilt, and sufficient upon which to convict, unless such recent possession is satisfactorily explained.

"22. The law is, that the burden of proving an *alibi* devolves upon the accused, and it must be clearly and satisfactorily established before it can avail, where the evidence otherwise makes a clear case against the accused."

Both of these are wrong, and directly in the teeth of previous rulings of this court. To require the defendant to "satisfactorily" explain his recent possession of the stolen property, and to "satisfactorily" establish an *alibi*, before it can avail, is imposing a burden on him but little short of convincing the jury beyond a reasonable doubt, (*Herrick* v. *Gary*, 83 Ill. 89,) whereas the burden is upon the People to establish his guilt; and if, after considering the evidence introduced by him as to either or both of these questions, in connection with all the other evidence in the case, and giving due consideration to the entire evidence, the jury shall have a reasonable doubt of the defendant's guilt, he can not be convicted. *Hopps* v. *The People*, 31 Ill. 385; *Miller* v. *The People*, 39 id. 465; *Mullins* v. *The People*, 110 id. 42. In *Conkwright* v. *The People*, 35 Ill. 204, a similar but less objectionable instruction, in its phraseology, than either of these, was held erroneous, because its tendency was to induce the jury to believe that the burden was on the defendant to establish his innocence, and that a reasonable doubt of his guilt would not entitle him to an acquittal.

Counsel for the People contend, however, that in *Waters v. The People*, 104 Ill. 544, an instruction in the precise language of instruction No. 2, here, was sustained. This is a misapprehension. In that case the defendant was seen in the possession of the property almost immediately after it was stolen, and he offered no evidence whatever to rebut the presumption of his guilt. The question, therefore, of the extent to which he was required to make explanation of his possession to exonerate himself, was not before the court. There being no evidence upon that subject, the instruction was irrelevant, but by no possibility could it mislead. The opinion therefore did not discuss it.

The eleventh and twelfth instructions, given at the instance of the People, are as follows:

"11. You are the sole judge of the credibility of the witnesses in this case, and the credit to be given to each is to be determined by you from considering the probability or improbability of their statements; their means or want of means of knowledge of the facts to which they testify; their manner upon the stand; their contradictory statements, if any; whether or not they were contradicted by other witnesses, or by facts and circumstances appearing in evidence. And if you believe, from the evidence, that the witness Hennessy has testified falsely as to any material fact in this case, then you may, and it is your duty to, disregard his entire evidence, except so far as he is corroborated by other credible evidence, or by facts and circumstances proved on the trial.

"12. If you believe, from the evidence, that the witness J. E. Hanna has received or agreed to receive any money in this case, then you should consider that fact in determining what credit, if any, you should give to his testimony. And if you believe, from the evidence, that J. E. Hanna has testified willfully and corruptly false as to any material fact, then you will disregard his entire testimony, excepting so far as

he is corroborated by other credible evidence, or by facts and circumstances proved on the trial."

These instructions are both erroneous, and have frequently been condemned by this court. The eleventh omits the very material qualification that the false testimony shall have been willful, and both assert that the jury *must* disregard the testimony. The jury *may*, but they are not *bound to*, disregard the evidence. *United States Express Co.* v. *Hutchins*, 58 Ill. 44; *Pope et al.* v. *Dodson*, id. 360; *Otmer* v. *The People*, 76 id. 149; *Gulliher* v. *The People*, 82 id. 146; *Swan* v. *The People*, 98 id. 612.

The seventeenth instruction, given at the instance of the People, is also objectionable because it omits the word "willful," before the words "false statement."

The seventh instruction, given at the instance of the People, reads:

"7. If you believe, from the evidence, beyond a reasonable doubt, that the horses in question were stolen from the owner, as charged in the indictment, and were seen in the possession of defendant at the city of Joliet, and that within a short time after the defendant had placed the team in a barn in the city of Joliet, one Eli Thorsen, a son of the complaining witness, met the defendant and told him of the fact that such a team had been stolen, and that the defendant then and there admitted that he knew said team, and failed to inform said Eli Thorsen of his knowledge concerning the whereabouts of such team at that time, but concealed the same from him, then such fact is proper for the consideration of the jury, in connection with all the evidence in the case, upon the question as to whether or not defendant had guilty knowledge of the larceny of said team."

This instruction is calculated to mislead, by selecting a part of the evidence on a particular question and calling the attention of the jury to it, and omitting other evidence that is entitled to be considered, on the same question. The People

proved that the defendant gave as a reason for not informing Eli Thorsen, at the time here mentioned, that he had bought and sold his father's horses, that he did not then have them in mind, and did not think that they could have been there. No one testified that the defendant admitted that at or before this interview with Eli Thorsen he knew that these were Thorsen's horses. It may be that the defendant's explanation was not satisfactory, still he was entitled to have it considered for what it was worth, and if it was advisable to call the jury's attention, in an instruction, to this branch of the evidence, it should have been called to all that affected the question to which it related. *Cushman* v. *Cogswell,* 86 Ill. 62; *Moore* v. *Wright,* 90 id. 470; *Illinois Linen Co.* v. *Hough,* 91 id. 63.

It is contended, however, that even conceding these instructions to be erroneous, they furnish no ground to reverse the judgment below, because, in the first place, the defendant was so clearly proved to be guilty that they could do no harm; and in the second place, the errors in them were corrected by other instructions in which the law was fully and accurately stated. It is our practice, where we can see, from the record, that the evidence was so overwhelmingly against the defendant that had the jury been instructed correctly they must still, necessarily, have found as they did, to decline to reverse for mere error of instruction. But where the evidence upon the question of guilt is not such that all honest minds of ordinary intelligence must necessarily come to the same conclusion after giving it proper consideration, the defendant is entitled to have it passed upon by a jury instructed with substantial accuracy as to the law applicable to it.

We can not say that the evidence in this record is so overwhelmingly against the defendant that the verdict must necessarily have been as it is had these erroneous instructions not been given. We think, the evidence all considered, a fair question was presented within the peculiar province of the jury.

In case of error in rulings upon irrelevant questions having no tendency to affect the real questions in issue, it has often been held there is no ground for reversal; but this principle is not claimed to apply to these instructions. Where instructions which are objectionable are cured by other instructions unobjectionable, the latter must either directly refer to and explain and qualify the former, or be supplementary to the former and supply what was omitted from the former; but obviously, where the latter are supplementary to the former instructions, the former must be correct as far as they go, and be defective only in not going farther, and including what is supplied by the supplementary instructions. But where one instruction says that the law is one thing with regard to a particular matter or state of circumstances, and another instruction says that the law is another and materially different thing with regard to precisely the same matter or state of circumstances, the instructions are repugnant, and no repetition of the correct instructions can cure the error of those that are incorrect, for the jury, assuming, as is their duty, that they are all correct, may as readily follow those that are incorrect as those that are correct.

The defendant proved by J. E. Hanna that he (the witness) was at the Schurts Hotel, in Joliet, on the night of the 31st of March and morning of April 1, 1885; that the train arrived from the west at 4 : 20 A. M., and that he was up and saw the defendant in the hotel between four and five o'clock on the morning of the 1st of April. This, if true, corroborated defendant in saying that he came upon the train and was at the hotel at that time, and also by tending to show that some one else must have brought the horses to Joliet. The People introduced evidence, over the objection of the defendant, to show that Hanna was discharged as hotel clerk a day or so before, by the proprietor of the hotel, on account of drunkenness. This was not done to contradict Hanna by proving his absence, for although it was contested whether

Hanna saw the defendant in the hotel at the hour he testi-
fied that he did, or that Hanna was, himself, up at that hour,
still there was no question but that Hanna was in the hotel,
in his room or elsewhere, at that time, so the only purpose
of the evidence must have been to impeach the witness. It is
quite clear that a witness can not be thus impeached. If his
reputation for truth and veracity was bad, that fact should
have been proved.    Why his employer had discharged him
was immaterial.

Barry and Stewart testified, on behalf of the State, contra-
dicting the defendant and Hanna as to the hour in the morn-
ing at which the defendant was in the Schurts Hotel. The
defendant offered to contradict the witnesses by the reporter's
notes and by testimony of members of the grand jury, prov-
ing that they had testified differently before the grand jury,
The court excluded the evidence. In this there was no error.
No basis was laid for the introduction of such testimony. It
was competent to prove by members of the grand jury that
the witnesses had testified differently before the grand jury.
(*Granger* v. *Warrington,* 3 Gilm. 299; *Bressler* v. *The People,
post,* 422.)    But the attention of the witnesses should have
been first called to the testimony they gave before the grand
jury, and they should then have been allowed to state whether
they did testify as claimed.    If they had admitted that they
did, they would have been then entitled to give any explana-
tion they could why their present testimony was different. If
they had denied that they had so testified, the defendant
would have been entitled to contradict them. *Regnier* v. *Cabot,*
2 Gilm. 34; *Northwestern Ry. Co.* v. *Hack,* 66 Ill. 238.

An objection is urged that the jury did not in their verdict
find the value of the horses.    We do not think this objection
tenable.    By section 224 of the Criminal Code, (1 Starr &
Curtiss, page 803,) "whoever feloniously steals or takes any
horse,   *  *  *   shall be imprisoned in the penitentiary not
less than three nor more than twenty years." This section

4—117 ILL.

is entirely independent of sections 215 and 216 of the same code, and was clearly, in our opinion, intended to make horse stealing a more serious crime than larceny in general. The same reason which impelled the legislature to fix a greater maximum and minimum punishment in all cases, evidently induced them to abolish the distinction between grand and petit larceny as to this offence.

Some other objections have been discussed in the arguments before us, but we deem them untenable.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*