MICHAEL MURPHY ET AL.

V.

JOHANNA CURRAN ET AL.

24   475
e114 ² 8

*Dram Shops—Action for Damages for Causing Death—Instructions—Repugnance—Exemplary Damages—Evidence.*

1. Instructions which state the law differently in regard to a particular matter or state of circumstances, are repugnant, and no repetition of the correct instruction can cure the error in the other.

2. In an action brought by a widow and her minor children against saloonkeepers, to recover damages for causing the death of her husband and their father, it is *held:* That an instruction which does not require the jury to find that the death was caused by the alleged intoxication, is erroneous; that this error is not cured by other instructions which fairly submit that issue to the jury; that an instruction as to exemplary damages, in view of the evidence, was improperly given; that, to warrant such an instruction, there must be something beyond the mere fact of the sale of intoxicating liquors and resulting damages; and that there was not sufficient evidence against one of the defendants to justify the verdict against him.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. MALONEY & STEAD and S. C. STOUGH, for appellant.

Messrs. BULL, STRAWN & RUGER, for appellee.

LACEY, J. This suit was brought by appellees, the widow and minor children of Michael Curran, deceased, under the Dram Shop Act, against John Down, C. O'Laughlin, Ernest Waterman, Martin McGitrick, Henry Rook, Charles Rook, Charles McGitrick, Michael McGitrick, Walter Adams, Michael Murphy and John Heaton, saloonkeepers in the village of Seneca, to recover damages to their means of support caused by the death of said Curran, December 6, 1885, which death is alleged to have been caused by the intoxication of Curran

produced in whole or in part by the above named defendants selling or giving away to him intoxicating liquors.

On the trial of the cause before a jury, after the evidence was all in, there being no evidence against the eight of said defendants first above named, the suit was dismissed as to them on the plaintiff's motion, leaving the suit to stand against the three last named, Walter Adams, Michael Murphy and John Heaton.

The jury found the three last named defendants guilty and assessed appellees' damages at $5,000, upon which verdict the court, after overruling a motion for a new trial, rendered judgment, from which judgment this appeal is taken.

The circumstances of Curran's death were about as follows:

On the afternoon of December 5, 1885, he was in the village of Seneca, and was seen in several saloons that afternoon drinking, and playing cards and pool in some one or more of them. The last seen of him was about half past six or seven o'clock P. M., a little after dark, in front of Michael Murphy's saloon, not drunk or sober—but "had a few drinks in" as one witness testifies—was "under the influence of liquor" as another states, and still another that he "was drunk;" all the witnesses thought at the time he was able to take care of himself; one witness for appellant saw him at seven and thought him sober.

For the last few years he had been in the habit of getting intoxicated. Some time between six and seven o'clock P. M., of the 5th, in the condition above stated, he started to ride home on a gentle horse.

The next seen of him was by John Stanton, who had been with him at Michael Murphy's saloon in Seneca, as above stated, lying in the highway apparently paralyzed, with his horse four or five feet from him. He was taken by Mr. Stanton and another and conveyed home in a buggy, and his wife sent for the doctor, who, on arriving there, found him unconscious and his breath smelling of liquor. The injury seemed to be in the head caused by falling or something of the kind. The opinion of the doctor was that there had been a slight fracture of the base of the skull. He died the next

morning at seven o'clock. It was about eight o'clock in the evening when he was taken home. It will be seen that there was no positive or clear proof that the injuries causing his death were the result of any intoxication, though the circum stances tended to show that such was the case. It was a proper question to be submitted to the jury on proper instructions.

It appears, from the evidence, that some time in the year 1882, the village Constable, Patrick Meagher, notified the defendant Heaton not to sell the deceased, Curran, any more liquor, as he was in the habit of getting intoxicated, but no notice was given to the defendants Murphy and Adams, they not being in the saloon business at the time.

The causes assigned for error are the giving of improper instructions on the part of the appellees, and that the evidence is not sufficient to support the verdict, and also the refusing proper instructions on the part of appellants, notably, the third and eighth refused instructions.

The first objection made by counsel for appellants is to the second given instruction for the appellees. It is as follows:

" If the evidence shows that Michael Curran was intoxicated on the said 5th day of December, 1885, and that such intoxication was caused in part by intoxicating liquor sold or given to him by said defendant Adams, or some one in his employ, and in part by intoxicating liquor sold or given to him by said defendant Heaton, or some one in his employ, and in part by intoxicating liquor sold or given to him by said defendant Murphy, or some one in his employ, then all of said defendants are jointly liable for all the injuries sustained by said plaintiffs in their means of support (if any is shown by the evidence), notwithstanding some one of the defendants may have contributed thereto to a greater extent than the others. And it would make no difference whether Curran called for the liquor himself or some one treated him or called for it for him."

We think the instruction is erroneous in the particular complained of, in that it does not require, to create liability, that there should be any evidence that Curran came to his death in consequence of the alleged intoxication. The instruction ignores that question and does not require the jury to find that

the death was caused thereby, but expressly tells it that in case the appellants sold deceased the intoxicating liquor in certain manner specified, then all of the appellants were jointly liable for the injuries, if any were sustained by appellees in their means of support.

If the cause of the death had, from the evidence, been so apparent that the jury must necessarily have found that it was the result of the intoxication, supposed by the instruction to be proven, then, perhaps, no injury could result from the error, but the evidence was not so clear on that point and should have been fairly submitted to the jury. It is true that other instructions given for appellees, as well as for appellants, fairly submit such issue to the jury, and it is claimed that this cured the error in instruction No. 2. But we are inclined to think not, under the facts in this case.

In Hoge v. The People, 117 Ill. 35, a case similar to this on the question we are now discussing, the Supreme Court, in answer to the same suggestion that is made here, that as other instructions stated the law accurately, the erroneous instruction could do no harm, says:  " But where an instruction says the law is one thing with regard to a particular matter or state of circumstances, and another instruction says the law is another and materially different thing in regard to the same matter, the instructions are repugnant and no repetition of the correct instruction can cure the error of those that are incorrect, for the jury, assuming, as is their duty, that they are all correct, may as readily follow those that are incorrect as those that are correct."  This quotation expresses all that need be said in reference to the suggestion made.

We are also inclined to think that, the state of the evidence considered, it was error to give appellee's eighth instruction relative to exemplary damages. The jury was instructed that it might find exemplary damages in addition to actual damages if it " believed from the evidence that the liquor was sold wantonly and wilfully, or under aggravating circumstances, to such an extent as they think proper, from all the evidence, should be awarded against the defendant found guilty who is least liable."

This instruction appears to recognize the rule of law that to authorize the recovery of exemplary damages there must be some kind of turpitude on the part of the wrongdoer outside of the fact that there was a bare right of recovery.

Facts and circumstances varying with the features of the case may authorize it, but there must be something beyond the mere fact of the sale of intoxicating liquor and resulting damages to justify it. Kellerman v. Arnold, 71 Ill. 632; Meidel v. Anthis, 71 Ill. 241, 247; Hacket v. Smelsley, 77 Ill. 109. And the instruction also recognizes the principle that the finding of exemplary damages should be no more than would be assessed against the defendant least at fault. That is, that there should not be a verdict for exemplary damages for all in a joint suit where one of the defendants was not subject to such assessment.

We find no fault with the principle announced in the instruction except that portion which told the jury that exemplary damages could be assessed where the intoxicating liquor was sold wilfully. We think this might be misleading. To sell liquor at all is to sell it knowingly and wilfully. The wilfulness must refer to the sale under some kind of circumstance showing a wilful disregard of the law on the subject, or of the consequences to those depending on the deceased for support.

But the serious objection to the giving the instruction is that the circumstances of the case as to the defendant Adams did not warrant it at all. As to the other two it might. Heaton, if there was any proof against him at all, had been notified not to sell Curran any intoxicating liquor. The evidence tended to show that Murphy had sold deceased liquor while he was intoxicated.

But almost the only proof against Adams was the testimony of John Sullivan. When Sullivan went into Adams' saloon on Curran's invitation it was early in the afternoon, between 12 o'clock M. and 2 o'clock P. M., and at that time Curran, as Sullivan swears, was not under the influence of intoxicating liquor. It is true that there was evidence that Curran was in Adams' saloon again late in the afternoon when he may have been somewhat intoxicated, but there was no proof that he

drank anything at that time, unless the mere fact that he was in the saloon for a short time could be deemed proof, which we think it could not, at least sufficient.

It is insisted that the fact that Curran had been in the habit of being intoxicated for a few years prior to that time, and that Adams lived in Seneca and kept saloon for a part of the time, was sufficient to charge Adams with notice of the fact; but we think other proof was required than that found in the record to charge Adams with such notice. We conclude, then, that there was not sufficient proof against Adams to warrant such an instruction.

We are also of the opinion that there was not sufficient evidence against defendant Heaton to warrant the jury in finding him guilty.

The only evidence against him in regard to his having sold Curran any intoxicating liquors consisted nearly entirely of the testimony of John Stanton and some others, that they had seen him in Heaton's saloon during the afternoon, and that Curran became intoxicated, and that he was a man that liked to drink.

Stanton's testimony was about as follows: " Saw him (deceased) first in Heaton's saloon, about 4 o'clock; there was a big crowd in. I was in a hurry; it was pretty cold and I stood by the stove warming myself. Curran came up and told the bartender to get me the best there was in the house. I took some whisky and he paid for it; threw 10 cents on the bar and paid for it. I took the whisky at the bar. He had a cue in his hand—billiard cue. The pool table was right back of the stove; east of the stove. I was about fifteen feet from the bar. I stayed there ten or fifteen minutes. I only drank that once with him. Stanton then went out and came back in about half an hour and saw Curran still there; he was standing back of the pool table talking. This is all I know about it. I saw him after that in Michael Murphy's saloon. I did not see Michael Curran drink any liquors in Heaton's saloon that day."

Thomas Cudigan saw Curran in Heaton's saloon playing pool at 2 or 3 o'clock that day; saw him go up to the bar with

James Stanton, but did not see him "drink any liquor at John Heaton's that day." About 4 o'clock Discol saw deceased in Heaton's saloon standing at the bar alone—nothing on the bar before him. Saw him drink nothing at Heaton's. Patrick Meagher and one or two others might have seen deceased in Heaton's saloon about this time.

It will be remembered that Heaton had been notified not to sell Curran any intoxicating drinks in 1882, and this may account for his treating John Stanton without drinking himself. The fact that Curran was intoxicated during the day, in view of the fact that he had been spending a good deal of his time in Murphy's saloon and that there were other saloons in town can not be of any weight. It will not do to infer that merely because a man enters a saloon that he purchased intoxicating liquors of the saloonkeeper.

It ought to require more substantial proof; yet on such testimony a judgment was recovered against Heaton of $5,000.

For the above errors the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*