[No. 2226. Decided May 23, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH KYLE, *Appellant.*

LARCENY OF NEAT CATTLE — SUFFICIENCY OF INFORMATION — VENUE — CONSTITUTIONAL LAW — POSSESSION OF RECENTLY STOLEN PROPERTY — BURDEN OF PROOF — INSTRUCTIONS — FALSE TESTIMONY.

The inclusion, in an information charging the stealing of neat cattle, of an allegation that they were of the value of $20 per head, does not affect the validity of the information upon the ground that it constitutes an attempt to charge grand larceny, as such allegation may be rejected as surplusage.

The stealing of neat cattle may be prosecuted either in the county where the property was first taken or in the county into which it was brought by the thief, under Code Proc., § 1194, authorizing the prosecution of larceny either in the county where committed or in the one into which the stolen property is taken.

No constitutional rights of defendants in criminal prosecutions

are violated by the act of March 21, 1895, providing that, in prosecutions for larceny under Penal Code, § 52, where the animal alleged to have been stolen was permitted to run on the range, proof of possession of the animal by the person accused of stealing the same shall be *prima facie* evidence that he acquired possession thereof recently, and shall have the effect of throwing on him the burden of explaining such possession.

The failure of the court to insert the word "wilfully" before "falsely," in charging as to the effect upon the credibility of a witness who has testified falsely as to a material fact, does not constitute reversible error, as a witness does not testify falsely unless he makes a wilfull misstatement.  (Gordon and Anders, JJ., dissent).

Appeal from Superior Court, Spokane County.— Hon. Norman Buck, Judge.    Affirmed.

*Fenton & Saunders,* for appellant.

*J. W. Feighan,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

Hoyt, C. J.—This appeal is from a judgment and sentence imposed after a verdict of the jury finding the defendant guilty of the crime of stealing neat cattle.    Many errors have been assigned and argued in the brief of appellant, but every question raised by such assignments depends upon the decision of two principal questions.    The first is as to the sufficiency of the information upon which the defendant was placed on trial.    It was substantially in the following language:

"J. W. Feighan, prosecuting attorney in and for the county of Spokane and State of Washington, comes here into court, and in the name and by the authority of the State of Washington, gives the court to understand and be informed that the said defendant Joseph Kyle is hereby charged with the crime of stealing neat cattle, committed as follows, to-wit:    That on the 13th day of November, A. D., 1895, at the county of Spokane and State of Washington, Joseph Kyle, then

and there being, did then and there unlawfully and feloniously steal, take, lead and drive away two head of neat cattle, then and there being the property of and belonging to Thomas Davis; said two head of neat cattle being valuable and of the value of twenty dollars per head; which said two head of neat cattle were permitted by the owner thereof, Thomas Davis, to run at large and graze upon the range, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Washington."

It is not contended but that it would have sufficiently charged the statutory crime of stealing neat cattle if the allegation as to the value of the cattle stolen had been omitted; but it is claimed that the charge in the information that the stolen cattle were of the value of $20 per head so changed its effect that it no longer charged simply the crime of stealing neat cattle, but also charged the crime of grand larceny as defined by our statute; the argument being that, since it was unnecessary to say anything about the value of the animals in order to properly charge the crime of stealing neat cattle, the stating in the information that they were of a certain value must have been for the purpose of showing that the crime of grand larceny had been committed.

It is probably true that an information for stealing neat cattle would be good without any allegation as to the value of the animals taken, but it does not follow that an information otherwise sufficient would be rendered invalid by such statement as to value. As well might it be claimed that an indictment which would be good that charged the stealing of a gray horse would be rendered invalid by a further allegation that the gray horse was nine years old. If the allegation as to value of the animals was unnecessary, it should

be rejected as surplusage, and it should be held to
have no effect upon the other allegations of the in-
formation.   If it had been stated in the information
that the defendant was accused of the crime of grand
larceny, and the facts constituting the crime had
been alleged as in the information under considera-
tion, there might be some force in the contention that
the facts stated were such as would be necessary to
charge the crime of grand larceny; but it having
been stated in this information that the defendant
was charged with the crime of stealing neat cattle,
and the facts alleged being sufficient to charge that
crime, it must be presumed that the facts alleged
charged that crime and no other.

The other question grows out of objections to the
introduction of evidence, and to the action of the
court in instructing and refusing to instruct the jury,
and was founded upon the contention of appellant that
the crime of stealing neat cattle was not larceny with-
in the meaning of the section of the statute (Code
Proc., § 1195) which provided that a prosecution for
larceny might be had either in the county where the
property was first taken, or in one into which it was
brought by the thief after it had been taken in an-
other county; and upon the further contention that
the act of March 21, 1895 (Laws, p. 470), which pro-
vided that in prosecutions for larceny, under § 52,
Penal Code, where the animal alleged to have been
stolen was permitted by its owner to run on the range,
proof of possession of the animal by the person ac-
cused of stealing the same should be *prima facie* evi-
dence that the accused acquired possession thereof
recently, and should have the effect of throwing on
the accused person the burden of explaining such pos-
session, was unconstitutional, by reason of the fact

that its effect was to cast the burden of proof in a criminal case upon the accused.

As to the first contention, it is sufficient to say that the statute which punishes the felonious taking of neat cattle describes the act as being that of stealing such cattle, and while it is true that that fact does not make the crime therein provided for common law larceny, it does constitute it such a statutory larceny as to bring it within the definition of larceny in the section referred to.

We are unable to agree with the contention that the other section referred to is unconstitutional. It is but an extention of the rule, which has long prevailed, that possession of property recently stolen is sufficient proof that the possessor is guilty of the crime to call upon him to explain his possession; and, so far as we are aware, it has never been claimed that the holding of the courts, that such *prima facie* presumption flowed from the fact of possession, infringed any constitutional right of the defendant, and if the existence of such a presumption did not infringe constitutional rights, we are unable to see that the presumption which the section in question authorizes the court to enforce infringes any such right.

There was one assignment of error which was not covered by the questions above discussed. It grew out of the failure of the court to insert the word "wilfully" before "falsely" in speaking of the effect upon the credibility of a witness having testified falsely as to a material fact; but as in our opinion a witness does not testify falsely unless he makes a wilful misstatement, the omission to insert the word "wilfully" in the instruction did not so change its meaning as to authorize us to reverse the case.

The judgment and sentence will be affirmed.

SCOTT, J., concurs.

DUNBAR, J. (*concurring*).— I cannot concur in the doctrine which is at least implied in the majority opinion, that the possession of recently stolen property, if unexplained, raises the presumption of guilt. I think the more modern and better doctrine is that no presumption is involved, but that the possession of recently stolen property is a circumstance to be considered by the jury like any other circumstance which may be proven tending to overcome the presumption of innocence. However, as the legislature has seen fit to prescribe this rule in a particular class of cases, and as I am not convinced that it violates any constitutional rights of the defendant, I do not feel at liberty to disregard the enactment, and I therefore concur in the result.

GORDON, J. (*dissenting*).— I concur in all that is said in the foregoing opinion save only as to the instruction given to the jury in which the court undertook to tell them under what circumstances they were at liberty to disregard the testimony of a witness. The instruction complained of is as follows:

"Another rule of law is that where the jury are convinced that any witness has testified falsely before you as to any one thing, you are at liberty to discredit his evidence entirely; the law does not say you must disregard his evidence because his evidence may be supported by other evidence as to give his story credit; *but if you are satisfied that any witness testified falsely as to any one material thing,* it is sufficient for you, if you think proper, to disregard his testimony entirely."

The giving of this instruction constituted, in my judgment, reversible error. The assumption of the majority that there is no difference or distinction be-

tween testifying falsely and "knowingly and wilfully" testifying falsely, is, in my opinion, entirely unsupported by reason or authority. I had supposed the proposition to be settled in the law that the maxim *"falsus in uno falsus in omnibus"* applied only to cases of wilful falsity, and I have been unable to find a case that supports the conclusion of the majority. On the contrary, the cases which have been reversed for the giving of the instruction here complained of are innumerable. To say that one who by mistake or through infirmity of memory makes a false statement thereby "makes a wilful misstatement" is, in my opinion, to ignore the rules of both law and language. Webster defines "falsely" as being "in a false manner; erroneously." Another definition is "not truly." It may be any of these and yet be the result of honest mistake rather than wilful design.

In *Childs v. State,* 76 Ala. 93, the court say:

*"A statement made in mistake* may be false, and yet it would not justify a disregard of all the witness might say. . . . To warrant the application of the maxim [*falsus in uno falsus in omnibus*] the alleged false statement *must have been made knowingly, intentionally, or with a design to deceive or mislead.* Unless the jury believe such was, or must have been, the case, then an *erroneous statement* does not, in and of itself, require by any absolute rule that the whole testimony must be disbelieved."

In *Grimes v. State,* 63 Ala. 166, the court say:

"Its falsity must result from design, and not from mere mistake, or infirmity, which affects only the character of the witness for accuracy."

In *Wilkins v. Earle,* 44 N. Y. 172 (4 Am. Rep. 655), the court say:

"The jury must believe the evidence to be *wilfully*

false, in some particular, before they are authorzed to discredit the whole evidence of a witness.

This proposition is fully supported in: *People v. Sprague*, 53 Cal. 491; *Pierce v. State*, 53 Ga. 365; *Mead v. McGraw*, 19 Ohio St. 55; *Jones v. People*, 2 Colo. 351; *Hoge v. People*, 117 Ill. 35 (6 N. E. 796); *People v. Strong*, 30 Cal. 151; Wharton, Evidence, § 412; Abbott's Law Dictionary, vol. 1, p. 480.

See, also, 29 Am. & Eng. Enc. Law, 780, and the long list of authorities there cited.    Indeed, the authorities upon this proposition might be multiplied indefinitely. I know of no good reason for departing from the rule so long established and universally adopted, and when we stop to consider that an instruction of this character is applicable to almost every case in which disputed questions of fact arise, it may well be doubted if the profession or the public will profit by the innovation.    To constitute perjury in this state (and everywhere else so far as I am advised) one must "wilfully and contrary " to his oath state as true " material matter which he *knows* to be false."    Would any lawyer contend that it would be sufficient to authorize a conviction for perjury that the jury should find that a particular statement was "falsely" made?    The instruction told the jury that if they were satisfied that any witness "testified falsely " as to any one material thing, they were at liberty to disregard his entire testimony.    This, as we have seen, was in law and in English equivalent to telling them that if they were satisfied that a witness erroneously stated any material matter through honest mistake or inadvertence, although without design to deceive or mislead, they were at liberty to disregard the entire testimony of such witness; hence the instruction was misleading and furnished an improper standard by which the

jury were authorized to measure and weigh the testimony.

I find it difficult to disregard the authority of adjudicated cases, and therefore very reluctantly dissent from so much of the opinion of the majority as relates to the question here discussed, as well as from the conclusion reached.    I think the judgment should be reversed.

ANDERS, J., concurs in the above.