## Samuel K. Gregg v. The People, etc.

1. INDICTMENT—*Form of, Under Statutes.*—Every indictment of the grand jury is to be deemed sufficiently technical and correct, which states the offense in the language of the statute creating it, or so plainly that its nature may be easily understood by the jury.

2. SAME—*Niceties in Pleading, When to be Discountenanced.*—Great niceties and strictness in pleading are to be countenanced and supported only when it is apparent that the defendant may be surprised on the trial and unable to meet the charge, or to make preparation for his defense for want of greater certainty or particularity in the charge.

3. EVIDENCE—*Admissibility of Copies of Reports of Commercial Agencies.*—A copy of the report of a commercial agency is admissible on the part of the defendant on trial for obtaining a signature by means of false pretenses where such party does not have the original report in his possession.

4. APPELLATE COURT PRACTICE—*Objections to Evidence Can Not be Made in the Appellate Court for the First Time.*—Where no objection is made to the introduction of evidence in the trial court they can not be heard in the Appellate Court for the first time.

5. INSTRUCTIONS—*Omitting Elements Necessary to a Conviction.*—An instruction in a criminal prosecution which purports to state hypothetically the facts, which, if believed by the jury from the evidence, will warrant a conviction, but which omits an element necessary to such conviction, is erroneous, and is not cured by other instructions in the case.

**Indictment** for obtaining a signature by false pretenses. Error to the Criminal Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed October 24, 1901. Rehearing denied November 21, 1901.

DAVID J. THOMPSON and BENJAMIN C. BACHRACH, attorneys for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, FRANK CROWE

and Frank Blair, Assistant State's Attorneys, for defendants in error.

Mr. Justice Adams delivered the opinion of the court.

Plaintiff in error was convicted in the Criminal Court of Cook County of obtaining, by false pretenses, the signature of C. M. Barnes and C. M. Barnes & Co., a corporation, to a promissory note for the sum of $500, and was sentenced to confinement in the county jail for thirty days, and to pay a fine of $1,000 and costs.   To reverse this sentence or judgment this writ of error was sued out.   The grounds for reversal relied on by counsel, in their argument, are that the indictment is fatally defective; that incompetent evidence was admitted; that the only evidence of the falsity of the representations charged in the indictment is evidence of certain admissions of plaintiff in error, and that an instruction given at the request of the people is erroneous.

The indictment is quite lengthy, and to avoid unnecessary prolixity we adopt the following statement of its contents contained in the argument of counsel for plaintiff in error:

" At the November term, A. D. 1899, of the Criminal Court of Cook County, an indictment was returned against the plaintiff in error, containing one count, which charged substantially that plaintiff in error, on the seventh day of June, A. D. 1898, in the County of Cook, etc., maliciously, knowingly, etc., did falsely pretend to Charles M. Barnes, as president of C. M. Barnes Company, a corporation, etc., that the Standard Boiler Co., a corporation, was then and there solvent; that said Standard Boiler Company was then and there doing a flourishing business; that said Standard Boiler Company then and there had a large amount of accounts and valuable contracts; that said Standard Boiler Company then and there was worth over the sum of sixty thousand dollars, and was not indebted to exceed twelve thousand dollars; which false pretenses and false tokens, the same being false pretenses and false tokens, were made by said Gregg upon said Barnes as president, etc., with the design and for the purpose to induce said Barnes, as president, etc., to then and there place, attach and affix the signature of

said Barnes, as president etc., and the signature of said C. M. Barnes Company, by said C. M. Barnes, its president, to a certain written instrument, to wit, a certain written note in words and figures following :

' $500.00.    .    CHICAGO, June 7, 1898.

' September 11th after date we promise to pay to the order of The Standard Boiler Co. five hundred and 00-100 dollars, at our office, 106 Wabash avenue, value received, with interest at 6 per cent per annum.

No. 15521.   Due——.

C. M. BARNES Co.
By C. M. BARNES, Pres.'

Said Barnes being president, etc., relying on said false pretenses and false tokens, believing them to be true, and being deceived thereby, was induced by reason thereof, after the making of said false pretenses and false tokens, to place, attach and affix his, said Barnes', signature, as president, etc., and the signature of said Barnes Company, by him, Barnes, as president, by which said false pretenses and false tokens the said Gregg did then and there knowingly, etc., obtain the signature of said Barnes as president, etc., and signature of said Barnes Company, by said Barnes, to said written instrument, which said signature so obtained as aforesaid is in the words following, to-wit: C. M. Barnes Co., by C. M. Barnes, Pres.; and that after the obtaining of said signature of said C. M. Barnes, by Barnes, etc., president, etc., said Gregg did obtain from said Barnes said written instrument, and said Barnes did then and there deliver said instrument, to wit, said note, to said Gregg, with signature of said Barnes, etc., and signature of said Barnes Company, attached, etc., thereto as aforesaid; that said false pretenses and tokens were made by said Gregg to Barnes as president, etc., with design and purpose of cheating and defrauding him, said Barnes, as president, etc., and said Barnes Company, and that said Gregg did then and there obtain signature of said Barnes as president, etc., and signature of said Barnes Company, and did then and there obtain said instrument, to wit, note, with the design and for the purpose of then and there cheating and defrauding him, said Barnes and said Barnes Company, whereas, in truth and in fact, as said Gregg well knew, said Standard Boiler Company was not then and there solvent and was not doing a flourishing business, but was wholly insolvent and not doing any business whatsoever, and did not have a large amount of accounts and valuable contracts,

Gregg v. The People.

which were then and there the assets of said Standard Boiler Company, and said Standard Boiler Company was not then worth over the sum of sixty thousand dollars, but was not then worth any sum of money whatever; that said Standard Boiler Company, as said Gregg then and there well knew, was indebted in divers amounts of money exceeding the sum of twelve thousand dollars, and that he, said Gregg, at the time he so falsely pretended as aforesaid, well knew the same to be false, contrary to the statute, etc."

The objection of counsel to the indictment is that it contains "no allegations of any relationship existing between Samuel K. Gregg and the Standard Boiler Company," and discloses no reason why Barnes, representing the C. M. Barnes Co., should give to Gregg a note payable to the Standard Boiler Co. The statute under which the indictment was framed, provides as follows :

"Whoever, with intent to cheat or defraud another, designedly, by color of any false token or writing, or by any false pretense obtains the signature of any person to any written instrument, or obtains from any person any money, personal property, or other valuable thing, shall be fined in any sum not exceeding $2,000, and imprisoned not exceeding one year, and shall be sentenced to restore the property so fraudulently obtained, if it can be restored," etc. 1 S. & C. Stat. 1896, p. 1279.

It is alleged in the indictment, in substance, that plaintiff in error knowingly, etc., with the design and for the purpose of defrauding and cheating C. M. Barnes, as president of the C. M. Barnes Co., and the said company, and with the design and for the purpose of inducing said Barnes to attach his signature, and the signature of the said company, to the promissory note set out in the indictment, pretended to said Barnes that the Standard Boiler Company was solvent, was doing a flourishing business, had a large amount of valuable contracts, and was worth over $60,000; that these pretenses or representations were each and all false, and that Barnes, relying on said false pretenses and believing them to be true, attached his and the C. M. Barnes Company's signatures to the note.

It will be observed that the indictment describes the

offense charged substantially in the language of the statute. It states the making of the pretenses, averring what they were, and alleging their falsity; the intent and the object of the pretenses, and the achievement of that object, viz., the obtaining the signature to the note.

It is provided in the criminal code:

" Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." 1 S. & C. S. 1896, p. 1389.

It has been frequently held that if an indictment is framed in accordance with this provision, it is sufficient. Miller v. The People, 2 Scam. 233; Quigley v. The People, Ib. 301; Conolly v. The People, 3 Scam. 474; Chambers v. The People, 4 Scam. 351; Eells v. The People, Ib. 498; Mohler v. The People, 24 Ill. 26; Morton v. The People, 47 Ib. 468; Loehr v. The People, 132 Ib. 504; West v. The People, 137 Ib. 189.

In Cannady v. The People, 17 Ill. 158, the court say:

" These great niceties and strictness in pleading should only be countenanced and supported when it is apparent the defendant may be surprised on the trial, or unable to meet the charge, or make preparation for his defense, for want of greater certainty or particularity in the charge."

In Skiff v. The People, 2 Parker's Crim. Cases, 139, it was objected to the indictment, among other things, that it did not allege any sale by Hale to Skiff of the property, or that Hale parted with his property in consequence of the representations, or at all. The court say:

" As to the indictment: It alleges that the defendant, with the intent to cheat and defraud one Samuel Hale, made certain false pretenses, which pretenses are set forth with particularity in the pleading; that Hale, believing such false pretenses and representations, was induced by reason of them to deliver, and did then and there deliver to the defendant thirty-nine head of cattle of the value of $600, of the property of Hale; and the defendant did designedly receive and obtain the cattle, by means of the false

pretenses, and with intent to cheat and defraud Hale. The pleading charges, in the language of the statute, that the defendant, with intent, etc., did obtain from Hale certain personal property, etc.; that Hale was induced by the false pretenses to deliver, and did deliver to the defendant, and that the defendant did receive and obtain, certain cattle. It does not, in terms, allege a sale of the cattle from Hale to Skiff, or any other bargain, by which the property was transferred from the one to the other; and accordingly when the public prosecutor proposed to show a bargain and sale of the cattle, by which they were transferred, the defendant objected, on the ground that no bargain and sale were alleged in the indictment. We are of opinion that the indictment is not defective in this respect. It sufficiently alleges the facts constituting the crime. The offense consists in obtaining the property, whether this be through a sale or bailment, or in any other way. The fact is specifically alleged that the cattle were delivered to and obtained by the defendant by means of false pretenses, that is, that they were transferred to him, and, under this allegation, evidence of the manner of the transfer was admissible."

In the same case the court say :

" The case does not show that Hale did not use ordinary prudence and diligence in inquiring into the truth of the pretenses. He inquired of Tabor, the landlord and neighbor of the defendant. But the degree of prudence, and the sufficiency of the pretenses to deceive, were questions of fact for the jury, and they have found against the defendant."

The false pretenses in the case were that Skiff owned certain real and personal property, and that his business of buying and selling cattle was profitable, and he was making money out of it. We are of opinion that the indictment substantially conforms to the statutory provision above quoted, and is sufficient.

The indictment charges that Barnes made the signatures to the note by reason of the false pretenses, and that plaintiff in error obtained the signatures by means of the false pretenses, and it is not necessary for the indictment to state the object of Barnes in attaching the signatures, or to aver facts from which it can be inferred that an ordinarily prudent or cautious man would have been deceived by the false pretenses. It is sufficient if the object of Barnes in affixing

the signatures, and that he was not guilty of negligence in the premises, appear from the evidence. It is for the jury to decide from the evidence, as was said by the court in the Parker case, *supra*, in respect to Hale, whether Barnes exercised ordinary prudence. The prosecution offered in evidence a copy of a report made by plaintiff in error, who was the president and treasurer of the Standard Boiler Company, to Dun's Commercial Agency, which is as follows:

" Our last inventory, under date of February 11th, is as follows:

| | |
|---|---|
| Authorized capital......... | $100,000.00 |
| Subscribed capital.......... | 65,000.00 |

ASSETS.

| | |
|---|---|
| Cash.....................$ | 1,800.00 |
| Bills receivable............ | 3,000.00 |
| Book accounts.............. | 20,000.00 |
| Merchandise, finished and unfinished................. | 12,000.00 |
| Raw material............... | 12,000.00 |
| Machinery and fixtures...... | 12,000.00 |
| Real estate................ | 6,000.00 |
| | $66,800.00 |

LIABILITIES.

| | |
|---|---|
| Bills payable..............$ | 8,000.00 |
| Accounts payable........... | 4,000.00 |

Officers, S. K. Gregg, John H. Gregg, Sec'y."

This evidence was objected to, on the ground that the original was the best evidence, and also because the copy was obtained from Dun's agency, and not from plaintiff in error. It appears from the evidence of Barnes that he, about June 5 or 6, 1898, went to the office of Samuel K. Gregg, by the request of a broker, who introduced him to Gregg, whom he never before had met; that Gregg proposed an exchange of notes between the Standard Boiler Co. and the C. M. Barnes Co., and said that such exchange only required mutual confidence; that the Standard Boiler Co. needed money during the summer months, on account of long contracts, etc.; that he, Barnes, asked Gregg for a financial

report or statement of his financial condition, when Gregg handed to him, Barnes, a statement which represented that the Standard Boiler Company had assets beyond its indebtedness of about $58,000, the exact amount witness did not remember, and that Gregg said the condition shown by the statement was the then condition of the company; that witness called his, Gregg's, attention to the fact that his signature was not attached to the report, when Gregg signed it; that witness handed the statement back to Gregg and had never since seen it; that the same day he went to Dun's commercial agency and got a copy of the report, and that it was exactly the same as the statement shown to him by Gregg, and which he had handed back to Gregg, with the exception of some remarks of the agency, which are omitted from the statement quoted *supra*. On the trial, the attorney for plaintiff in error was called on to produce the original, and his answer was, " We haven't got it." The copy was properly admitted in evidence. Counsel for plaintiff in error object that " various mortgages and deeds given by the Standard Boiler Co. of Indiana, and records of the Indiana courts of actions at law and in chancery, in which the Standard Boiler Co. of Indiana was involved, were introduced and admitted in evidence over the objection of the defendant, for the purpose of showing that the Standard Boiler Co. of Indiana was insolvent during the latter part of June, 1898." The Standard Boiler Co. of Indiana was incorporated June 20, 1898, and it appears from the evidence that the assets and liabilities of the Standard Boiler Co. of Illinois were transferred to the Indiana company. Jessie B. Gregg, sister-in-law of Samuel K. Gregg, testified that the Indiana corporation had only what the Illinois corporation formerly had; that it assumed all the debts of the Illinois corporation; also, that the Indiana company did not buy anything of anybody, or borrow any money of anybody; that she, the witness, was secretary and treasurer of it. It also appears from the evidence that the Indiana corporation was formed at the suggestion of plaintiff in error; that it was a dummy corporation, and that the object of its forma-

tion was to delay the creditors of the Illinois company. A chattel mortgage of date June 22, 1898, from the Standard Boiler Co. of Indiana to Elmer E. Mummert and Frances E. Baker, conveying all machinery, manufactured articles, office furniture and fixtures, and all other personal property situated and adjoining the plant of the company at Goshen, Indiana, also all commercial paper held by the City National Bank of Goshen, Indiana, and a certain described contract, to secure an indebtedness of the mortgagor to said mortgagees of $1,117.33, evidenced by two promissory notes, was put in evidence. No objection was made to the introduction in evidence of the mortgage, and objection can not be heard here for the first time. But even though objection had been made, we think the evidence should have been admitted, as being competent and relevant. Mrs. Gregg's testimony shows that a note of the Illinois corporation fell due and that that corporation could not meet it, and that the holders of the note went to Goshen, Indiana, and threatened to close up the affairs of the Indiana corporation unless payment were made, and that the mortgagees advanced the money to pay the note, in consideration of which the mortgage was executed. It also appears from the evidence that Mr. Baker, one of the mortgagees, was president of the bank at Goshen, Indiana, and that the mortgage was made at the suggestion and by the procurement of plaintiff in error. The Indiana corporation was merely the creature and part of the Illinois corporation; it was practically the Illinois corporation.

In respect to the objection as to the records of the Indiana court, the bill of exceptions does not furnish sufficient data to enable us to pass intelligently on the question of their admissibility. What purports to be a transcript of an order appointing a receiver in the suit of "Elmer E. Mummert et al. v. Standard Boiler Co. et al.," appears in the bill of exceptions. The summons and the answer of the defendants appear to have been contained in the order, but instead of their appearing in the transcript in their proper places, we find the words "here insert," and neither

summons nor answer is inserted, nor does the bill appear in the bill of exceptions.

The full title of the suit not appearing in the record, nor in the summons, bill or answer, we are unable to determine who were parties to the suit, in addition to Mummert and the Standard Boiler Co. For aught that appears from the transcript before us, the suit may have been against the Standard Boiler Co. of Illinois, and plaintiff in error may have been a party defendant. In this state of the record we can not intelligently pass on the competency of the order appointing a receiver. We can not sustain the objection that the sole proof of the falsity of the pretenses charged in the indictment was evidence of admissions of plaintiff in error.

The evidence, other than that as to admissions of plaintiff in error, shows that the Illinois corporation was unable to pay its debts; that the Indiana corporation, which was its creature and tool, and which nominally assumed its debts, was threatened with a winding up of its affairs, unless the indebtedness of the Illinois corporation should be paid, and that the Indiana corporation, at the suggestion and by the procurement of plaintiff in error, the president of the Illinois corporation, executed a chattel mortgage to secure the indebtedness of the Illinois corporation. The court gave to the jury, at the request of the prosecution, the following instruction:

" The court instructs the jury, that if you find from the evidence, beyond a reasonable doubt, the defendant, Samuel K. Gregg, on the sixth day of June, 1898, did feloniously, knowingly, designedly represent to one Charles H. Barnes, president of the corporation known as the C. N. Barnes Company, that a certain corporation known as the Standard Boiler Company was a solvent corporation and was worth over and above all liabilities the sum of $50,000, and that the pretenses and representations aforesaid were false and fraudulent and known to be so by the said Gregg, and that the said Charles M. Barnes then and there acting on behalf of the said C. M. Barnes Company did rely upon and believe the representations aforesaid, if any, to be true, and was decided thereby, and was induced by reason thereof

to execute and deliver for said C. M. Barnes Company to the Standard Boiler Company the promissory note of the said C. M. Barnes Company set out in the indictment herein, then you should find the defendant, Samuel K. Gregg, guilty."

The instruction purports to state hypothetically the facts, which, if believed by the jury from the evidence, would warrant a conviction; but omits an essential element, namely, the intent to cheat and defraud. The language of the statute is: "Whoever, with intent to cheat or defraud another, designedly, by any false token," etc.; and the indictment expressly charges that plaintiff in error intended, by the false pretenses alleged, to cheat and defraud Barnes and the Barnes Company. It is evident that the jury, disregarding all other instructions, might have based their verdict on the instruction above quoted, in which case they would not necessarily have found guilty intent.

A hypothetical instruction, purporting to state facts on which a verdict for the plaintiff may be based, but omitting an essential element, is erroneous even in a civil action, and is incurable by other instructions. St. L. & S. E. Ry. Co. v. Britz, 72 Ill. 256.

The learned counsel for the People make no answer to the objection to the instruction. On account of the error in giving the instruction quoted *supra*, the judgment will be reversed and the cause remanded.