2 Ill. App.3d 884 (1971)
270 N.E.2d 164
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
PEPPER KEATING, Defendant-Appellant.
No. 70-189.
Illinois Appellate Court  Second District.
Original Opinion, May 24, 1971.
Supplemental Opinion, September 14, 1971.
Additional Supplemental Opinion, December 21, 1971.
E. Roger Horsky, and Ralph Ruebner, of Defender Project, of Elgin, for appellant.
*885 William Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, and Leo Wotan, Jr., Assistant State's Attorneys, of Elgin, of counsel,) for the People.
Judgment reversed.
ORIGINAL OPINION
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
A jury found the defendant guilty of the possession and sale of narcotics; only the latter conviction is appealed.
Defendant contends that (1) the court erred in denying his pretrial motion for a list of last known residence addresses of state witnesses when there was no showing that the lives of the witnesses or their families had been threatened by defendant; (2) the court erred in refusing to instruct the jury on the issue of entrapment; (3) the court erred in failing to instruct the jury that the sale had to be knowingly made; and (4) the sentence imposed was excessive and tantamount to cruel and unusual punishment.
At the time of the crime, defendant was 17 years old, single, and gainfully employed. His parents were divorced and he had lived with several different families. He had been previously convicted for contributing to the delinquency of a minor for which he served a two week sentence.
On August 12, 1969, two Illinois Bureau of Investigation agents and an Aurora policeman agreed to use an informer in an attempt to purchase marijuana from the defendant. One IBI investigator, shabbily attired and wearing a moustache, drove an unmarked car to the informer's house. The two had not previously met. They drove to defendant's house, parked across the street and the informer went to the door. Moments later defendant emerged carrying a coffee can. Defendant and the informer entered the car and defendant directed the agent to pull around the corner. There the agent was shown the 169 grams of marijuana contained in the can, gave defendant $100 in prerecorded currency in exchange for the can and returned defendant and the informer to their homes.
The entire transaction was corroborated by the second IBI agent and the Aurora policeman who had followed in another unmarked car. The informer did not testify at the trial because he was in jail in another State at that time.
Prior to trial, defendant moved for the production of a list of the last known residence addresses of the prosecution witnesses. The record discloses the following disposition of the motion:

*886 "Mr. ELLSWORTH: I have, your Honor, this morning filed with the Clerk of the Court and hand to the State's Attorney my list for last-known addresses of witnesses.
THE COURT: I will give you the last-known addresses as of their last place of employment. Draft such an order. Draft such an order.
Are you ready for trial?"
As can be seen, no argument was had and the draft order stated, "denied to the extent that People of the State of Ill. are required hereby to produce last known business address only." The State failed to produce the business addresses, but the record shows that defendant made no attempt to enforce this order. During cross-examination the witnesses were asked no questions about their addresses or backgrounds; no attack on their credibility was made.
Defendant did not testify; however, in his opening statement, defense counsel made a judicial admission that defendant was guilty of possession of marijuana.
After his request for an instruction on entrapment had been denied, counsel, in closing argument, reminded the jury that each of them had stated during voir dire that, "in a proper case," they could find defendant guilty of the sale of narcotics. Counsel then argued that the statute contemplated punishing "the trafficker in drugs who plays [sic] upon the children in the school yard," not defendant. He concluded by asking the jury to hold defendant guilty of possession and requesting them to find that this was not a proper case for a verdict of guilty of the sale of narcotics.
In the post-trial motion, defendant renewed his objection to the denial of his pretrial motion and objected to the court's failure to give the entrapment instruction.
While this appeal was pending, defendant filed a supplemental brief raising, for the first time, an additional contention for reversal. The contention is that the trial court failed to instruct the jury that knowledge was an essential element of the crime charged. Defendant did not offer such an instruction nor did he object because the State's instruction, relating to the burden of proof, failed to contain the element of knowledge.
At the start, we are faced with the question of whether the denial of the pre-trial motion, requesting the residence addresses of the State's witnesses, affected the balance of the proceedings sufficiently to prejudice the defendant and thereby constitute reversible error.
Section 114-9(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114-9(a)) states that "On motion of the defendant the court shall order the State to furnish the defense with a list of prosecution witnesses and their last known addresses."
*887 In People v. Gonzales (1970), 120 Ill. App.2d 406, app. den., 43 Ill.2d 397, we interpreted the statute to require the production of residence addresses and based our opinion on Smith v. Illinois (1968), 390 U.S. 129, 19 L.Ed.2d 956, 88 S.Ct. 748 and Alford v. United States (1931), 282 U.S. 687, 75 L.Ed. 624, 51 S.Ct. 218. (It should be noted that while the opinions in Smith and Alford preceded the denial of the pretrial motion herein, our opinion in Gonzales was filed after the pretrial motion but prior to trial.)
We reaffirm our position that, upon pretrial motion by the defendant, the State is required to produce the residence addresses of its witness in order that out-of-court investigation may be had. One of the exceptions, not present in the instant case, is where the record discloses the witness's personal safety to be in jeopardy.
We have again reviewed the Smith and Alford opinions and later cases interpreting and further limiting their application.
In United States v. Teller (7th Cir.1969), 412 F.2d 374, 379-380, it was held:
"* * * Smith does not per se require a new trial merely because the district court sustained an objection to a question seeking to elicit Washington's address. Smith requires reversal only where the lack of a witness's name and address denies a defendant an opportunity to effectively cross-examine a witness. When this happens, a defendant is denied his Sixth Amendment right to confrontation. However, the initial question is whether the defendant was denied effective cross-examination. It is clear from the recital of Washington's testimony that the district court did not unduly limit cross-examination of Washington's past record."
See also, United States v. Lawler (7th Cir.1969), 413 F.2d 622, 627.
Illinois courts have found the right of cross-examination in Smith to be limited to "cases involving convictions essentially dependent on the credibility of the witness being cross-examined." People v. Shaw (1969), 117 Ill. App.2d 16, 20.
Another limitation was stated in The People v. Finch (1970), 47 Ill.2d 425. There, during cross-examination, the witness was asked his address, the trial court directed that it be given to defense counsel for his exclusive use, and counsel accepted the information in this manner. On appeal, the court said, at page 436:
"* * * In addition, it can be said that the absence of any objection by counsel at that time under the circumstances operated as a waiver of the right to obtain unconditionally the home address of the witness. One certainly has the right to waive cross-examination and just as certainly he can waive an aid to cross-examination. We do not consider *888 there has been a showing of reversible error."
In the instant case it is argued that to require the defendant to await trial for disclosure of residence addresses of State's witnesses would stifle out-of-court investigation to obtain facts for impeachment purposes and thereby emasculate his right to effective cross-examination. We agree and find that the denial was error. However, we conclude that the error was not prejudicial in this instance and therefore, not reversible.
In United States v. Marti (2nd Cir.1970), 421 F.2d 1263, the government witness under cross-examination was asked where he lived and responded, "In Queens." When asked where in Queens, the prosecution requested a side bar conference during which he volunteered to give defense counsel the address but not disclose the same in open court. Cross-examination continued and defense counsel did not pursue the matter in his questioning nor did he request the prosecution to privately disclose the witness's address. On review, the Court, after discussing the Smith and Alford cases, stated at page 1266:
"* * * Here, the inability to elicit Pelletier's address on cross-examination cannot have prejudiced any investigation of Pelletier, either in or out of court. Cf. United States v. Bennett, 409 F.2d 888 (2nd Cir.1969). No claim is made here that any investigation of Pelletier would have been somehow less thorough if only counsel knew his address (as the prosecutor offered) then it would have been if both counsel and appellants knew it (as they would have if Pelletier gave his address in open court). In fact, in view of counsel's failure to ask the prosecutor for the address privately, it is unlikely the defense was interested in the address for investigative purposes."
The facts in the case at bar disclose that the pretrial motion was denied perfunctorily, that defendant made no request for argument, that no attempt was made to obtain the business addresses of the witnesses which the court decreed to be given, and that during cross-examination the defendant never inquired about the resident addresses of any of the State's witnesses nor in any manner attempted to delve into their background for impeachment purposes. Instead, the questioning was directed toward clarification of the facts of the transaction involved. Under these circumstances, we find it is unlikely that the defense was interested in the addresses for investigative purposes, United States v. Marti, supra, and hold that the right to pretrial knowledge of residence addresses was waived by defendant's conduct, The People v. Finch, supra.
Defendant next asserts that his entrapment instruction should have been given. In support of his argument, he points to counsel's admission that his client was guilty of possession of marijuana and claims that sufficient facts were brought out, on direct and cross-examination of the *889 State's witnesses, to permit the instruction. Defendant specifically points to the following: a shabbily dressed undercover agent was used; he drove an unmarked vehicle; the informer knew defendant; prerecorded money was used; and no evidence showed defendant's involvement in any prior sales.
The definition of entrapment is set forth in section 7-12 of the Criminal Code, (Ill. Rev. Stat. 1969, ch. 38, par. 7-12):
"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."
The essence of the defense is that the criminal intent arose in the mind of the law enforcement officer, not in the mind of the accused. (People v. Outten (1958), 13 Ill.2d 21, 23.) Entrapment does not occur where the police merely afford an opportunity to commit the act or purposely aid or encourage the accused. (People v. Hall (1962), 25 Ill.2d 297, 300.) The nefarious business of the sale of narcotics is not a game governed by rules of gentlemanly conduct and fair play. Indeed, it dictates that tactics such as disguise, unmarked cars, informers, and controlled sales be employed by the police.
While we agree with defendant that an instruction regarding a defense should be given where there is slight evidence upon a specific theory (People v. Kalpak (1957), 10 Ill.2d 411, 425; People v. Sweeney (1969), 114 Ill. App.2d 81, 89) we do not agree that there is such evidence in this case. In fact, the record is devoid of evidence of entrapment. No one testified describing the methods used by the informer to get defendant to agree to the sale. Defendant was ready and waiting when the auto arrived. He entered the car and, with no persuasion by the informer or agent, directed that it be moved to a different location. He readily accepted the money. The uncontroverted testimony of the agent was that he had not previously met or talked with either defendant or the informer.
The instruction was properly refused. People v. Cash (1963), 26 Ill.2d 595, 598.
Although we have not found it necessary to base our decision on it, we note that it is questionable whether the entrapment instruction should have been given for another reason. Denial of the commission of the acts constituting the offense is inconsistent with the defense of entrapment. (People v. Realmo (1963), 28 Ill.2d 510, 512.) Here, defense *890 counsel admitted his client was guilty of possession of narcotics, but made no such admission concerning sale.
Defendant relies on People v. Kuykendall (1970), 120 Ill. App.2d 225; People v. Lewis (1969), 112 Ill. App.2d 1; and People v. Davis (1966), 74 Ill. App.2d 450, in support of his claim that the omission of the element of scienter was a fundamental error which required reversal. However, we feel the case at hand to be governed by People v. Truelock (1966), 35 Ill.2d 189; and People v. Jones (1st Dist. 1971), No. 54137.
The factual situation in Jones was almost identical to this case. The court said, and we agree, that when no objection is made to the omission of the element of knowledge, error is waived. Even if we were to accept defendant's argument that an error was made and properly raised, the error would still not permit reversal. In Truelock, the word "knowingly" was omitted from the instruction. The reviewing court agreed that the instruction was erroneous, but said, at page 192:
"* * * However, we do not think that the error in this case requires reversal. `Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' [Citations omitted.] In the present case, the evidence of the defendant's knowledge of the presence of narcotics is clear and convincing. We do not think that a jury could reasonably have found the defendant not guilty in this case, and therefore, reversal is not justified."
Similarly, reversal here is not justified. When defendant admitted being guilty of possession of marijuana, he admitted that he knew the substance sold was marijuana. See also, People v. Chupich (1st Dist., 1971), No. 52504, (Ill. App.2d); People v. Cazaux (1969), 119 Ill. App.2d 11, 17-18.
Defendant's argument that his 10-20 year sentence is unconstitutional is answered by People v. Calcaterra, 33 Ill.2d 541, 548, cert denied (1965, 385 U.S. 7, 87 S.Ct. 65, 17 L.Ed.2d 8 and People v. Gonzales, 25 Ill.2d 235, cert. denied (1962), 372 U.S. 932, 9 L.Ed.2d 728, 83 S.Ct. 740. Gonzales held that the mandatory ten year minimum for a first offender in a narcotics sale case was not unconstitutionally disproportionate to the nature of the offense. Calcaterra held that a penalty within the maximum imposed by the legislature is not cruel and unusual punishment.
However, defendant also requests that this court invoke its power to reduce sentences in appropriate cases. We have made a careful examination of the record to see if the cause is a proper one for the reduction of the sentence. Defendant's background, and the nature of the crime as revealed by this search, has been set forth above. These facts, *891 combined with the fact that the State's Attorney recommended a sentence of ten years to ten years and one day, convince us the the penalty imposed is excessive. Accordingly, the maximum sentence is reduced to eleven years.
Judgment, as modified, affirmed.
SEIDENFELD and GUILD, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The defendant, after filing of the original opinion herein, filed a petition for rehearing which was denied by this Court. Thereafter, before the issuance of a mandate and before the expiration of the time allowed for a petition to appeal to the Supreme Court, a motion for reconsideration of our denial was filed upon which oral arguments were had. Subsequently, we vacated the order denying the petition for rehearing.
The basis for the motion is that on August 16, 1971, House Bill No. 788, as amended, entitled the "Cannabis Control Act," was enacted into law by the Governor. On the same date, House Bill No. 787, as amended, entitled "Illinois Controlled Substance Act," was also enacted into law by the Governor's signature. By this latter Act, the "Uniform Narcotic Drug Act," under which the defendant herein was convicted, was repealed and replaced by the above referred to enactment, the Cannabis Control Act.
Section 18 of the Act provides:
"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or a final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Emphasis added.)
Under the new Act, the sale of 169 grams of marijuana (of which the defendant was guilty) is punishable, on the first conviction, by imprisonment in the penitentiary from one to four years. (Section 5(d).)
The motion of defendant requests, in the alternative, this Court to reduce his sentence to a term of one to four years, grant him probation or order his immediate release. This motion was consolidated for the purpose of oral argument with a like motion in the case of People v. McCloskey, supra at 892.
*892 We hereby adopt, for the purposes of disposition of the motion herein, the supplemental opinion filed today in the case of People v. McCloskey, supra at 892.
We therefore adhere to our original opinion in so far as affirming the judgment of conviction but remand the case and direct that, within 15 days of the filing of this supplemental opinion, the defendant be brought before the trial court and a hearing be had upon the motion and objections thereto (which are hereby transferred); and further, that within 15 days of conclusion of said hearing, the trial court is to certify to this Court the evidence taken, together with the judgment entered.
Judgment affirmed in part; cause remanded with directions.
This court retains jurisdiction for further review, if necessary.
SEIDENFELD and GUILD, JJ., concur.

ADDITIONAL SUPPLEMENTAL OPINION
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The conviction in this case was affirmed and the matter remanded for the trial court to conduct a hearing (under the provisions of the "Cannabis Control Act") and report its findings to this Court.
In view, however, of People v. McCabe, Gen. No. 42674, filed October 15, 1971, rehearing denied November 24, 1971, 49 Ill.2d 338 (1971); and People v. Hudson, Gen. No. 43994, filed November 30, 1971, 50 Ill.2d 1, there is no necessity for a hearing under the "Cannabis Control Act."
The judgment of the trial court is therefore reversed.
Judgment reversed.
SEIDENFELD and GUILD, JJ., concur.