THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD LEE HORTON, Defendant-Appellant.

(No. 73-22; 

Fifth District—October 4, 1973.

*Rehearing denied October 30, 1973.*

G. MORAN, P. J., dissenting.

James M. Drake, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Arthur J. Inman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was indicted by a grand jury of Sangamon County for the crimes of unlawful sale of heroin, unlawful possession of cocaine; unlawful possession of heroin and unlawful possession of a hypodermic needle. The charge of possession of cocaine was dismissed on motion of the State. On motion of the defendant for a change of venue because of pretrial publicity the case was moved to Madison County for trial. Following the trial a jury returned a verdict of not guilty of the sale of heroin but guilty of unlawful possession of heroin and guilty of unlawful possession of a hypodermic needle. The defendant was sentenced to a term of imprisonment for six to ten years for unlawful possession of heroin and for one year for unlawful possession of a hypodermic needle, the sentences to run concurrently. Defendant appeals.

One Raymond Wesley, a four times convicted felon and admitted former narcotic addict, was a sometimes employee of the Illinois Division

of Narcotics Control. On December 8, 1969 at about 9:30 A.M. he went to defendant's home in Springfield. At about eleven o'clock on the same date he went to the headquarters of the Division of Narcotics Control in Springfield. While there Inspector Metcalf and other agents stripped and searched Wesley and his clothing to insure that he did not have any narcotics on this person. A search was also made of his car. Wesley was then given $25.00 in prerecorded money which had been powdered with flourescent powder. Wesley then drove to the residence of defendant in Springfield for the purpose of making a controlled buy of narcotics, either heroin or cocaine or both. He was kept under surveillance by agents in another automobile until he went into defendant's house. According to Wesley's testimony he made a purchase of heroin from defendant which was arranged by defendant calling one Floyd "Porky" King by telephone. Shortly after the call, King was observed by the agents to arrive and enter the defendant's residence. According to Wesley's testimony, King brought a packet of heroin to defendant who turned it over to Wesley who thereupon gave defendant the previously marked and treated money and defendant thereupon gave the money to King. It was defendant's testimony that Wesley came to his door and was admitted by Walter Jones, defendant's brother-in-law. He asked to use the restroom so defendant told him to go upstairs. When he came down he asked and was granted permission to use the phone so he could call "Porky" King. After using the phone Wesley walked up to defendant who was sitting on a couch and gave him a ten dollar bill. Defendant said he put the bill in his pocket, thinking it was repayment of a debt but Wesley kept asking for change. Defendant did not give Wesley change but returned the ten dollar bill. When King came in a few minutes later, he passed some stuff to Wesley and Wesley gave King money.

Wesley and King left defendant's residence together and the agents and police officers immediately thereafter went to defendant's residence and demanded admission. When this was refused the door was kicked open and entry made. Superintendent Ware of the Illinois Bureau of Identification ran upstairs and upon hearing a flushing noise kicked open the door to the bathroom and retrieved a paper bag from the commode.

Agent Metcalf, by using a black light, found fluorescent powder on defendant's hands, shirt and pants, including his right pants pocket but defendant did not have any of the marked money on his person. In the course of searching the defendant's residence agents found other items including a bottle cap containing heroin residue, a spoon containing heroin residue, hypodermic syringes and needles and other paraphernalia identified as the type used by addicts. These items were found when defendant told one of the agents "The stuff is in the other bedroom." According to the testimony defendant then took the agent to the south

bedroom and pointed to the top of a shelf where a hypodermic needle and cooker were found. The cooker was a metal bottle cap burned on the bottom which testimony established was used to cook down powdered heroin to a liquid so it can be injected. A chemist for the Illinois Bureau of Identification testified that the full packet taken from Wesley contained heroin, that a measuring spoon found with the paraphernalia gave a "presumptive" test of heroin, that he examined the residue in the blackened bottle cap and found that it revealed the presence of heroin. In making the test he scraped approximately 20 milligrams of residue from the bottle cap leaving additional residue remaining.

Defendant, his wife and others present in the residence at the time of the incident denied any knowledge of the heroin residue in the bottle cap and spoon and also denied any knowledge of the presence of the hypodermic syringe and needle.

Defendant's first contention is that the court improperly refused his counsel the right to question witnesses concerning the environment, present situation, motives and bias of the addict informer and in refusing to permit him to introduce evidence to impeach the credibility of the informer. The argument is directed at the witness Wesley who arranged and was the principal actor in the controlled buy of narcotics. He was an admitted narcotics addict and four times convicted felon with a very unsavory record, all of which was presented to and doubtless considered by the jury. The refused attempt to attack Wesley's credibility arose from the fact that a short time prior to the arranged purchase of narcotics the defendant and his brother reported to a detective of the Springfield Police Department that Wesley had stolen a television set from defendant's brother. This incident was to serve as the basis for defendant's attempt to bring before the jury the fact that Wesley was out to "get" defendant. Defendant also contends that the court improperly restricted cross-examination of Wesley and some police officers regarding the address of Wesley's family and his living environment. Wesley had testified that he was being supported by his family but the defendant was not permitted to establish the location of the family. Defendant bases his argument in this connection upon *People v. Shaw*, 117 Ill.App.2d 16, 254 N.E.2d 602.

■■ We deem it unnecessary to consider defendant's argument regarding the character, environment, motivation or bias of witness Wesley. His character was fully displayed to the jury by testimony admitted on both direct and cross-examination and it may be summarized by saying it showed an unsavory, unreliable and unstable person. We think it apparent that the jury did disbelieve the testimony of Wesley as evidenced by the fact that they returned a not guilty verdict on the charge of

illegal sale of narcotics, the only charge to which defendant Wesley testified. Defendant in his brief termed this "a very close case." While we would agree it was a very close case on the charge of illegal sale of narcotics, that issue was resolved in defendant's favor. Much of the alleged error and irregularity of which defendant complains was concerned with the State's attempt to prove this charge. The jury's not guilty verdict shows the failure of the State's case in that regard and their rejection of the testimony of witness Wesley.

■■ On the other hand the evidence bearing upon the charges of illegal possession of narcotics and illegal possession of a hypodermic needle was simple, direct and, we think unconnected with the evidence adduced to prove the illegal sale. The evidence bearing on the two charges for which convictions were obtained was comprised of the testimony of the officers regarding the finding of the incriminating evidence, the analysis of a laboratory technician (whose findings are undisputed), and the incriminating statement and gestures of defendant directing the officers to the location of the items in question. We view this evidence sufficient to sustain the convictions. The requisite knowledge of possession is readily found in defendant's direction of the officers to the "stuff." It was so taken by the jury despite the denials and statements of innocence by defendant and the corroborative testimony of his witnesses. The verdict also discounts defendant's suggestion that Wesley "planted" the narcotics paraphernalia during his 9:30 A.M. visit to defendant's home. No proof whatsoever supports this claim.

■■ Defendant next complains that the jury was improperly instructed on the crime of possession of narcotics in that the instructions defining the crime of possession of heroin and the State's burden of proof of that crime omitted the element of knowledge. However, the instructions were given without objection and therefore omission of the elment of knowledge is waived and cannot be raised on appeal. (*People v. Keating*, 2 Ill.App.3d 884, 270 N.E.2d 164; *People v. Truelock*, 35 Ill.2d 189, 220 N.E.2d 187.) Furthermore, the point was not raised in defendant's post-trial motion and the failure to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856; *People v. Nelson*, 41 Ill.2d 364, 243 N.E.2d 225.) This rule of waiver applies to constitutional questions as well as to other issues. *People v. Pickett, supra; People v. Long*, 39 Ill.2d 40, 233 N.E.2d 389.

■■ Defendant also contends that the small amount (20 milligrams) of heroin recovered from the bottle cap would constitute an insufficient amount to constitute possession of narcotics. However the State crime laboratory technician who testified to the removal of the residue from

the bottle cap and described its testing also testified that there was other residue remaining in the cap so that the amount originally present would have exceeded 20 milligrams. Nevertheless, in *People v. Palumbo*, 5 Ill. 2d 409, 125 N.E.2d 518 the Supreme Court sustained a conviction for illegal possession of narcotics based upon an amount just over .008 of a gram. The People's witness used .020 grams, approximately 2½ times that found sufficient to convict in the *Palumbo* case. Moreover, the statute under which defendant was convicted (Ill. Rev. Stat. 1969, ch. 38, par. 22—3) does not mention a minimum required quantity. A parallel section of the currently controlling Controlled Substances Act (Ill. Rev. Stat., ch. 56½, par. 1402(b)) in like manner contains no minimum required quantity to sustain a conviction.

■■ Defendant also asserts that prejudicial error was committed when the prosecutor remarked in his opening statement that Superintendent Ware would testify that in his search he found notebooks and papers which contained names of various persons, and sums of money beside them, and that some of the persons were arrested on the day in question for various narcotic offenses. During the trial the notebooks and papers were excluded from evidence but an agent was permitted to testify that after his conversation with Wesley on the day of the raid he obtained arrest warrants for five persons he named in addition to the defendant, one of these being Floyd "Porky" King. Defendant argues that the statement of the prosecutor coupled with the testimony regarding the arrest warrants for the other persons were inflammatory and prejudicial since they would tend to cause the jury to believe defendant was involved with a narcotics ring. The State strenuously contends, on the other hand, that the prosecutor's remark, the notebooks and papers and testimony regarding other arrest warrants were proper in that they tended to show the requisite knowledge for a conviction of possession of heroin. They cite *People v. Wilson*, 46 Ill.2d 376, 263 N.E.2d 856 and argue that the court erred in defendant's favor in excluding the notebooks, papers and testimony regarding issuance of the warrants. We deem it unnecessary to decide the point for although it may be conceded that such statement and testimony might cause the result defendant suggests it is nevertheless apparent from the not guilty verdict returned upon the charge of illegal sale of narcotics that such was not the case. The only bearing these elements of the trial could have would be upon the charge of illegal sale. The prosecutor's remark and the testimony regarding additional warrants were doubtless discounted by the jury since it was also direct evidence of a sale of narcotics, a notion rejected by the jury.

For the reasons assigned in *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1; and *People v. Shadowens*, 10 Ill.App.3d 450, 294 N.E.2d 107,

the sentence imposed for the conviction of illegal possession of narcotics must be adjusted to conform to the sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, pars. 1001—1—1 *et seq.*).

Section 402(b) of the Controlled Substances Act (Ill. Rev. Stat., ch. 56½, par. 1402(b)) provides that a person convicted of illegal possession of less than 30 grams of heroin is guilty of a Class 3 felony. Section 5—8—1(b)(4) of the Code of Criminal Corrections fixes the penalty for a Class 3 felony at not less than one nor more than 10 years.

■■ The statutory penalty in effect at the time defendant was convicted provided for a term of imprisonment of not less than two nor more than 10 years. Proceeding under that statute the court held extensive hearings upon defendant's application for probation. The application was denied and a penalty of not less than six nor more than ten years in prison was imposed. In view of the hearings already conducted we deem it unnecessary to remand to the trial court for further hearing to determine whether more than a one year minimum penalty should be imposed. However, the minimum term of defendant's penalty must be reduced to one-third of the maximum of ten years in order to conform to section 5—8—1(c)(4) of the Uniform Code of Corrections. Accordingly, the minimum term of imprisonment upon defendant's conviction of the crime of illegal possession of narcotics (heroin) is reduced from six years to three years and four months.

Judgment affirmed, sentence modified.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

Without proof that the defendant knowingly possessed a narcotic drug, the defendant could not have been convicted of the crime of unlawful possession of a narcotic drug and the jury should have been so instructed. *People v. Truelock*, 35 Ill.2d 189.

The problem is that the instructions submitted to the jury on this charge (Instructions 16 and 17) omitted the element of knowledge. The contention that this omission is reversible error was first raised on appeal. The majority opinion has ruled that because the instructions were given without timely objection, the issue cannot now be raised on appeal for the first time. However, Supreme Court Rule 451(c) provides that substantial defects in the instructions are not waived by failure to make timely objections if the interests of justice require. I think this case is such an exception to the ordinary waiver rule; this court should review the issue of defective jury instructions.

The function of jury instructions is to inform the jurors as to the law

applicable to the issues they must decide. In particular, jury instructions must clearly tell the jurors what the elements of the crime are and which side has the burden of proof. (*People v. Davis*, 74 Ill.App.2d 450; *People v. Kuykendall*, 120 Ill.App.2d 225.) It is not necessary that one instruction be a complete statement of the law; it is only necessary that instructions, when read together in a series, fully and accurately state the applicable law. (*People v. Falley*, 366 Ill. 545, 551; *People v. Gilbert*, 12 Ill.2d 410, 416; *People v. Epping*, 17 Ill.2d 557, 566; *People v. Mills*, 40 Ill.2d 4, 15.) In this case it must be decided whether the jury instructions when read in a series (Instructions 16, 17, 18, 19 and 19-A) made it clear to the jurors that the accused had to *knowingly* possess the heroin to be guilty of that crime. The state argues that Instruction 19-A supplemented Instructions 16 and 17 and thereby the jurors were adequately and fully informed as to the elements of the crime. Reading Instructions 16, 17, 18, 19 and 19-A in a series, I cannot agree that the jury was so informed. People's Instruction No. 16 reads:

"A person commits the crime of violating the Narcotic Drug Act who possesses heroin."

People's Instruction No. 17:

"To sustain the charge of violating the Narcotic Drug Act, the State must prove the following proposition:

That the defendant possessed heroin.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

People's Instruction No. 18:

"A person commits the crime of violating the Narcotic Drug Act who knowingly has in his possession a hypodermic syringe, hypodermic needle or an instrument adapted for the use of narcotic drugs by subcutaneous injection."

People's Instruction No. 19:

"To sustain the charge of violating the Narcotic Drug Act, the State must prove the following proposition:

That the defendant knowingly had in his possession a hypodermic syringe or hypodermic needle adapted for the use of narcotic drugs by subcutaneous injection.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

People's Instruction No. 19-A:

"Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession."

A plain reading of these instructions suggests Instructions 16 and 17 were the sum total of the instructions regarding the charge of possession of heroin; likewise, Instructions 18, 19 and 19-A appear to be all of the instructions regarding the separate crime of possession of hypodermic needles and syringes. Both the sequential arrangement of these five instructions and the fact that the word "knowingly" appears in Instructions 18, 19 and 19-A and is conspicuously absent from Instructions 16 and 17 lead to this conclusion.

This conclusion is further buttressed by the fact that Instruction 17 was verdict directing, and as such, should have included every element of the crime since the jury could reasonably assume that that instruction alone fully and accurately stated the law. (*Gregg v. People*, 98 Ill.App. 170; *People v. Young*, 188 Ill.App. 208.)

"When the court gives a charge designed to cover all the issues in the case, it should embrace all the essential elements involved therein. In such case, omission of a material issue is error." 5 Wharton's Criminal Law and Procedure, par. 2090 (R. A. Anderson ed. 1957).

To ask jurors to come to a verdict in Instruction 17 and expect them to supplement the elements of the crime recited in that verdict directing instruction by Instruction 19-A without an express reference back to the crime of possession of heroin is unreasonable. (*Hoge v. People*, 117 Ill. 35, 6 N.E. 796.) The omission of the knowledge element from Instructions 16 and 17 constituted error.

Generally, improper jury instructions deny the accused a fair trial and therefore constitute reversible error. However, there is a line of cases holding that "where * * * the evidence was so overwhelmingly against the defendant that had the jury been instructed correctly, they must still, necessarily, have found as they did," the court should decline to reverse for mere error of instruction. (*Hoge v. People*, 117 Ill. 35, 6 N.E. 796.) The most often cited authority for this policy as applied to narcotics is *People v. Truelock, supra.* Truelock, like Horton, was also tried for possession of heroin and the element of knowledge was also omitted from the jury instructions. However, the facts dis-

tinguish the two cases. Truelock had been observed by police in possession of heroin and was arrested at a table which had a considerable quantity of heroin on it. The *Truelock* court held that although it was error to omit the element of knowledge from the jury instructions, it was not reversible error since the evidence that he *knowingly* possessed the heroin was so clear and convincing "that the jury could not have reasonably found Truelock innocent." The evidence presented against Horton is not so "clear and convincing." The principal prosecution witness on the element of knowledge was the Superintendent of the Illinois Bureau of Investigation, Mitchell Ware:

> "The search was started in the north bedroom, then Mr. Horton said, 'The stuff is \* \* \* in the other bedroom.' He then took me to the south bedroom, pointed to the top of a shelf. There was a hypodermic needle and a cooker \* \* \*."

After relating that these and other items were taken into custody, Mr. Ware then recalled Horton's reaction:

> "The defendant said, 'You got nothing. That's not stuff.' " ("Stuff" is slang for heroin.)

The defendant testified that he had no knowledge of the presence of any narcotics in his apartment. His wife also so testified. In sum, the record of the case does not provide "clear and convincing" evidence that the defendant knew there was heroin in his apartment. It was a close question for the jury to decide; therefore it was essential for the jury instructions to be accurate. (*People v. Galloway*, 28 Ill.2d 355, 192 N.E.2d 370, U.S. *cert.* denied in 376 U.S. 910; *People v. Mack*, 12 Ill.2d 151, 195 N.E.2d 609.) Here the defendant was convicted of a crime by a jury which had been incorrectly instructed that they could convict him without proof of an essential element of the crime with which he was charged. This constituted reversible error. The defendant is entitled to have the issue of his guilt decided by a jury fully and clearly informed as to the element of the crime.