THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD CHATMAN, Defendant-Appellant.

Fourth District   No. 13975

Opinion filed June 27, 1977.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Gerald Chatman, was charged in the Circuit Court of Peoria County, of the Third Judicial District, with rape and armed robbery. Upon his motion, pursuant to section 114—6(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—6(c)), the venue was changed to Logan County of this, the Fourth Judicial District, where he was tried by a jury, convicted of both offenses, and sentenced to concurrent terms of imprisonment of 50 to 150 years for rape and 10 to 30 years for armed robbery. These sentences were ordered to run consecutively to a sentence for which defendant was on parole at the time of the offenses and concurrently to another sentence.

■■   We note at the outset that this cause is properly before us. Article VI, section 6, of the Illinois Constitution of 1970 provides that appeals from circuit courts lie to the appellate court for the district in which the circuit court is located. This appeal is from the Circuit Court of Logan County, where the case was tried, and not from the Circuit Court of Peoria County, where the charge was presented (see *People v. Horton* (1973), 15 Ill. App. 3d 51, 303 N.E.2d 534).

At trial, the prosecuting witness began to cry during her testimony, whereupon a female juror also began to cry. That juror was then questioned by court and counsel out of the presence of the other jurors. She said that she cried because the witness looked like her niece. The juror stated, however, that she had not lost her objectivity and that she could be fair and impartial.

Both sides rely upon *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705. There, a prospective juror had revealed on voir dire that he had worked for the election of the State's attorney and been campaign manager for the sheriff, who would be a witness. He also revealed other close ties to the prosecution, including the fact that his wife was a courthouse employee who often worked with the State's attorney. The prospective juror stated that he could, nevertheless, be fair and impartial. The trial court denied a challenge for cause by the defendant, who had exhausted his peremptory challenges. The defendant was forced to accept the juror. A divided supreme court affirmed the trial court. Although reaffirming that a defendant has a constitutional right to a fair and impartial jury, the court stated that the impartiality of a juror depended upon his state of mind and that the trial court might consider the juror's opinion of his own state of mind in ruling upon the juror's competency to serve. The court further stated that the burden was upon the party objecting to a juror to show the prejudice of the juror and that the court's determination as to the juror's prejudice would not be set aside unless it was contrary to the manifest weight of the evidence.

■■ The challenge in *Cole* arose during the selection of the jury, a time when a large number of jurors are usually available. The instant challenge arose during trial, when, at most, two replacements are available if a juror is excused. The practical effect of the close working relationship which the prospective juror there had with the prosecution was much more of a hindrance to impartiality than the emotional reaction of the juror in the instant case. Here, the trial judge thoroughly questioned the juror and also gave counsel ample opportunity to question her. The juror's answers were probative. The trial court's decision denying the challenge to the juror was clearly not contrary to the manifest weight of the evidence.

■■ Defendant also maintains that the presence of the challenged juror might have prejudiced the entire jury. Since no motion to withdraw a juror or for a mistrial was made, the point has been waived. In any event, we note that the trial court thoroughly admonished the juror not to discuss her thoughts on the resemblance between her niece and the victim with the other jurors.

■■ At sentencing, the trial judge stated that he did not think that consecutive sentences need be imposed for the protection of society but that he was imposing sentences consecutive to the sentence for which

defendant was on parole because he felt that he was required to do so by section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(f)). That section requires that a convict who has been "committed to the Department of Corrections" at the time of the offense for which he is being sentenced be given a consecutive sentence. The parties agree that the section does not require a consecutive sentence for one on unrestricted parole at the time of the offense. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) Here, defendant was on parole but as a condition of the parole had been required to spend the first 90 days at a halfway house. In support of the imposition of consecutive sentencing, the State cites *People v. Gillespie* (1977), 45 Ill. App. 3d 686, 360 N.E.2d 133, which held that a convict serving a work release sentence at the time of offense was required to be given a consecutive sentence. Defendant's residence at the halfway house here was apparently required pursuant to section 3—3—7(b)(3) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—7(b)(3)), which authorizes the Parole and Pardon Board to require as a condition of parole that the parolee "attend or reside in a facility established for the instruction or residence of persons on probation or parole." Although defendant had not been "released" from the facility, he was in his 91st day there and had thus fulfilled that condition of parole. We deem his position to be analogous to other parolees and not to that of prisoners undergoing periodic imprisonment. We determine that the imposition of consecutive sentences was error. In doing so, we recognize that the trial judge did not have the benefit of *Gibson* at the time of sentencing.

■■ The State requests that, if we find the imposition of consecutive sentences to be in error, we remand for resentencing rather than order the existing sentences to run concurrently. The sentencing judge recognized that upon review we might not agree with his interpretation that consecutive sentences are required. He stated that if the sentences were not required to be served consecutively, he would have imposed a sentence of 60 to 108 years for the rape. He recognized that the only practical effect of imposing such a greater sentence would be to inform the Parole and Pardon Board of his appraisal of the seriousness of the offense and defendant's rehabilitative potential. Since the clerk of the court is required by section 5—4—1(d)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1(d)(2)) to transmit to the Department of Corrections "any statement by the court of the basis for imposing the sentence," that information is before the Department of Corrections and available to the Parole and Pardon Board. We see no useful purpose served in remanding for resentencing.

Accordingly, the convictions are affirmed, the sentences are affirmed with the exception of the portions of the sentences which make them run

consecutively with a prior sentence. Those portions of the sentences are reversed. The case is remanded to the Circuit Court of Logan County for the issuance of an amended mittimus.

Affirmed in part, reversed in part and remanded.

CRAVEN, P. J., and REARDON, J., concur.